**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH A. D'AVERSA, on behalf of himself and all others similarly situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| v. | |
| J. CREW GROUP, INC.; J. CREW OPERATING CORP.; J. CREW, INC.; J. CREW INTERNATIONAL, INC.; CHINOS HOLDINGS, INC.; CHINOS INTERMEDIATE HOLDINGS A, INC.; and CHINOS INTERMEDIATE HOLDINGS B, INC., | |
| Defendants. | |

Plaintiff Joseph A. D'Aversa, on behalf of himself and all others similarly situated, through his undersigned attorneys, files this class action Complaint against Defendants and alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this nationwide class action against Defendants alleging violations of federal pricing regulations, common law, and the consumer protection laws of numerous states.

2.      Specifically, it is alleged that Defendants engaged in a systematic scheme of false and misleading advertising, marketing, and sales practices with respect to the sale of apparel and other personal items via their online J. Crew Factory store website.  This scheme, which is set forth in more detail herein, may be summarized as follows.

3.      First, Defendants had, and continue to have, a policy of setting an arbitrary "valued at" price for every item offered for sale on their website, which purports to be the item's "original" or "regular" price.  This practice is false and misleading because no items are ever

sold or offered for sale at this "valued at" price, but rather are always sold at a price that is lower than the "valued at" price.

4.      Second, Defendants perpetually held, and continue to hold, a series of site-wide "sales" that purport to discount, for a limited time, all items on their website by a certain percentage off of the "valued at" price.  For example, during an advertised "30% off everything" sale, Defendants offered a sweater "valued at" $84.50 for a "discounted" price of $58.50, a purported 30% discount off the "valued at" price.  This practice is false and misleading because the advertised sale prices do not represent an actual 30% discount, as the items have never been sold or offered for sale at their "valued at" prices.

5.      Third, Defendants represented and continue to assert that their advertised sale prices are available only for a limited time, such as for a 24-hour or a 5-day period.  This practice is false and misleading because each sale is immediately followed by another similar sale, which results in the same or a very similar "discounted" price for each item on Defendants' website.

6.      Because Defendants' purported sale prices never end, but rather continue on a daily basis and are available anytime a customer visits the website, they are not actually discounts at all, but rather the everyday, regular prices of the items.

7.      Federal regulations prohibit the advertising of false, "phantom" price reductions and discounts off inflated, fictitious "regular" prices that never actually existed.  *See* 16 C.F.R. § 233.1.

8.      Moreover, the consumer protection laws and common law of all states, including New York and New Jersey, prohibit deceptive advertising, marketing, and sales practices, including advertising and selling items at purported discounts and offering price advantages that do not exist.

9.      By advertising these limited-time discounts, which were never actually provided to customers, and by selling items based on these non-existent discounts, Defendants have violated numerous state consumer protection laws as well as the common law and federal regulations, as set forth herein.

10.     Plaintiffs bring this lawsuit against Defendants to stop this unlawful practice, to recover for the class of customers of the online J. Crew Factory store website the overcharges that they paid, and to obtain for customers the actual discounts they were entitled to receive but did not due to Defendants' deceptive practices.

## PARTIES

11.     Plaintiff Joseph A. D'Aversa is an individual and a resident and citizen of New Jersey.  During the class period, Plaintiff purchased goods from Defendants' online J. Crew Factory store and suffered an ascertainable loss and monetary damages as a result of Defendants' unlawful conduct alleged herein.

12.     Defendant J. Crew Group, Inc. is a for-profit corporation formed and existing under the laws of the State of Delaware with its principal place of business at 770 Broadway, New York, New York 10003, and thus is a citizen of Delaware and New York.  Defendant J. Crew Group, Inc. may be served with process by service upon its registered agent, Corporation Service Company, 80 State Street, Albany, New York 12207.

13.     Defendant J. Crew Operating Corp. is a for-profit corporation formed and existing under the laws of the State of Delaware with its principal place of business at 770 Broadway, New York, New York 10003, and thus is a citizen of Delaware and New York. Defendant J. Crew Operating Corp. may be served with process by service upon its registered agent, Corporation Service Company, 80 State Street, Albany, New York 12207.

3

14.     Defendant J. Crew Inc. is a for-profit corporation formed and existing under the laws of the State of Delaware with its principal place of business at 770 Broadway, New York, New York 10003, and thus is a citizen of Delaware and New York.  Defendant J. Crew Inc. may be served with process by service upon its registered agent, Corporation Service Company, 830 Bear Tavern Road, Ewing, New Jersey 08628.

15.     Defendant J. Crew International, Inc. is a for-profit corporation formed and existing under the laws of the State of Delaware with its principal place of business at 770 Broadway, New York, New York 10003, and thus is a citizen of Delaware and New York. Defendant J. Crew International, Inc. may be served with process by service upon its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

16.     Defendant Chinos Holdings, Inc. is a for-profit corporation formed and existing under the laws of the State of Delaware with its principal place of business at 770 Broadway, New York, New York 10003, and thus is a citizen of Delaware and New York.  Defendant Chinos Holdings, Inc. may be served with process by service upon its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

17.     Defendant Chinos Intermediate Holdings A, Inc. is a for-profit corporation formed and existing under the laws of the State of Delaware with its principal place of business at 770 Broadway, New York, New York 10003, and thus is a citizen of Delaware and New York. Defendant Chinos Intermediate Holdings A, Inc. may be served with process by service upon its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

18.     Defendant Chinos Intermediate Holdings B, Inc. is a for-profit corporation

formed and existing under the laws of the State of Delaware with its principal place of business at 770 Broadway, New York, New York 10003, and thus is a citizen of Delaware and New York. Defendant Chinos Intermediate Holdings B, Inc. may be served with process by service upon its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

19.     Upon information and belief, all Defendants have a parent-subsidiary relationship, in that Defendant J. Crew International, Inc. is a wholly-owned subsidiary of Defendant J. Crew, Inc., which is a wholly-owned subsidiary of Defendant J. Crew Operating Corp., which is a wholly-owned subsidiary of Defendant J. Crew Group, Inc., which is a wholly-owned subsidiary of Defendant Chinos Intermediate Holdings B, Inc., which is a wholly-owned subsidiary of Defendant Chinos Intermediate Holdings A, Inc., which is a wholly-owned subsidiary of Defendant Chinos Holdings, Inc.

20.     At all times during the relevant class period, Defendants together owned and operated, and continue to own and operate, more than 300 J. Crew and J. Crew Factory retail stores throughout the United States.

21.     Defendants also own and operate the online J. Crew and J. Crew Factory store retail websites, which advertise, market, and sell retail products in every state in the United States, including New York and New Jersey, and have done so throughout the relevant class period.  Defendants operate the online J. Crew Factory store website out of their headquarters in New York, which operation entails, *inter alia*, the creation and implementation of the advertising, marketing, and sales policies described herein, including the sale of items.

22.     Defendants created the policies and procedures described herein and, at all times during the relevant class period, participated in, endorsed, implemented, and performed the

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.  Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the sum of $5,000,000.

24.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) because Defendants were within the relevant class period, and continue to be, citizens of this district, in that the principal place of business for each Defendant is located in this district.  Moreover, Defendants regularly transacted and continue to transact business in this district, in that all items sold on Defendants' website are sold from this district.

25.     This Court has *in personam* jurisdiction over the Defendants because, *inter alia,* Defendants: (a) are headquartered in this district; (b) transacted business in this district; (c) maintained continuous and systematic contacts in this district prior to and during the class period; and (d) purposefully availed themselves of the benefits of doing business in this district. Accordingly, the Defendants maintain minimum contacts with this district which are more than sufficient to subject them to service of process and to comply with due process of law.

## FACTUAL ALLEGATIONS

26.     Defendants are in the for-profit business of selling apparel and other personal items in their retail J. Crew and J. Crew Factory stores, as well as via their online J. Crew and J. Crew Factory store retail websites.

27.     This lawsuit concerns Defendants' false and misleading advertising, marketing, and sales practices with respect to their illusory "discounting" of items sold on their online J. Crew Factory store website.

28.     Specifically, on the J. Crew Factory store website, each item for offered for sale is, and was during the class period, assigned a "valued at" price, which purports to be the "original" or "regular" price of that item.

29.     This "valued at" price is illusory, however, because no item on Defendants' website is ever sold, or even offered for sale, at the listed "valued at" price.

30.     Rather, each item is and has been always offered for sale at a price that is much lower than its assigned "valued at" price, pursuant to a continuously-running series of limited-time, site-wide "sales."

31.     These sales purport to discount, for a limited time only, all items on Defendants' website by a certain percentage off the "valued at" price.

32.     Thus, Defendants represent to their customers that the "valued at" price is the "original" or "regular" price of the item offered for sale, and the "sale" price is a discounted price.

33.     By way of example, Defendants will hold a single-day "sale" where "everything" on their website is advertised – by way of a brightly-colored banner at the top of their website page – to be "30% off."

34.     During such a sale, every item on their website will be offered for sale at a "discounted" price that is equal to 30% off the "valued at" price.

35.     Because the items on Defendants' website were never sold or offered for sale at the "valued at" price, however, the items are not actually discounted by 30%, and thus the 30% discount advertised by Defendants is false and misleading.

36.     Moreover, Defendants will notify customers that the advertised "discounted" prices are valid only for a limited time, such as on a single day from "12:01 am ET through

11:59 pm ET."

37.     Yet the next day, Defendants will hold a different "sale" in which everything on their website is advertised to be, for example, "up to 50% off" for 24 hours.

38.     Despite the difference in the terms of the sales, the actual prices of the items offered for sale to the public remain identical or substantially similar from sale to sale.

39.     Defendants follow each sale with another similar, albeit slightly different sale, which results in the same or a very similar "discounted" price for each item on Defendants' website.

40.     This series of successive sales continues *ad infinitum*, such that all of the items on Defendants website are always "on sale" and offered to the public at a purported discount, and moreover remain at identical or substantially similar prices every day.

41.     On the rare day when Defendants are not holding a site-wide sale, the prices of the items on their website do not equal the fictitious "valued at" price, but rather are substantially similar or identical to the items' purported "discounted" prices during a "sale."

42.     Upon information and belief, the items on Defendants' website always either were advertised as being "on sale" or offered for sale at a price lower than their "valued at" prices.

43.     Moreover, all items on Defendants' website are always offered for sale to customers at the same or substantially similar prices, which Defendants advertise to be "sale" or "discounted" prices, regardless of the specific terms of the advertised sale in effect on that specific day.

44.     Because Defendants' purported sale prices never end, but rather continue on a daily basis and are available anytime a customer visits the website, they are not actually

discounted or sale prices at all, but rather constitute the everyday, regular prices of the items.

45.    Upon information and belief, Defendants never significantly increase the price of any item from its advertised sale price.  Over time, however, Defendants may reduce the prices of certain items – for example, to clear out excess inventory – resulting in an item being offered for a lower price in a subsequent sale.  The prices of such items are not raised back to the original sale price, but remain at the reduced price (or eventually are reduced even further).

46.    This practice violates 16 C.F.R. § 233.1, which specifically prohibits the advertising of false, "phantom" price reductions and discounts off inflated, fictitious "regular" prices that never actually existed.  *See id.*, stating:

**§ 233.1  Former price comparisons.**

**(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. <u>If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.</u>**

**(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. <u>The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price</u> (for example, by use of such language as, "Formerly sold at $___"), <u>unless substantial sales at that price were actually made.</u>**

**\*       \*       \***
**(d) <u>Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he never offered the article at all; he</u>**

**might feature a price which was not used in the regular course of business, or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced.**

**(e) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.**

47.     Upon information and belief, in the case at bar, the "valued at" prices of the items on Defendants' website are **"not bona fide but fictitious"** under 16 C.F.R. § 233.1 because the items were never sold or offered for sale at that price.

48.     Consequently, the purported **"reduced"** prices are **"in reality, ... [Defendants'] regular price[s]"** and **"the 'bargain[s]' being advertised"** by Defendants are **"false."**  16 C.F.R. § 233.1.

49.     What happened to Plaintiff D'Aversa helps illustrate Defendants' unlawful practices described herein.

50.     On February 22, 2016, Defendants advertised a sale that discounted "30% off" everything on their J. Crew Factory store website.  Pursuant to the advertised sale, the prices on all items offered for sale on their website reflected at least a 30% discount off the "valued at" price.

51.     In order to take advantage of the advertised 30% discounts, Plaintiff D'Aversa purchased two men's sweaters from Defendants' J. Crew Factory store website.

52.     The first was a Factory Fisherman Crewneck Sweater, Item E7456 ("Fisherman Sweater"), which was "valued at" $84.50 and had a sale price of $58.50 (a purported 30.8% discount off the "valued at" price).

53.     The second was a Factory Striped Crewneck Sweater, Item E6817 ("Striped Sweater"), which was "valued at" $64.50 and had a sale price of $45.00 (a purported 30.2% discount off the "valued at" price).

54.     According to Defendants' website, the "30% off" offer was valid only "on February 22, 2016, 12:01 am ET through 11:59 pm ET."

55.     Plaintiff D'Aversa paid a total of $103.50 for the two sweaters on February 22, 2016.

56.     On the following day, February 23, 2016, Defendants advertised a different sale, which offered a discount of "up to 50% off everything" on their J. Crew Factory store website. According to the website, this sale was valid only "on February 23, 2016, 12:01 am ET through 11:59 pm ET." *See* Exhibit A.

57.     Under the terms of the new "sale," the Fisherman Sweater was listed at the same "valued at" price of $84.50 and sale price of $58.50.  The Striped Sweater was listed at the same "valued at" price of $64.50, but at a lower sale price of $38.50 (a purported 40.3% discount off the "valued at" price).  *See id.*

58.     On the next day, February 24, 2016, Defendants held yet another, different sale on their J. Crew Factory store website.  This time, customers were offered an "extra 30% off" the listed prices of items by entering a code (which Defendants provided along with the offer in the brightly-colored banner at the top of their website).  According to the website, this third consecutive sale was valid "from February 24, 2016, 12:01 am ET through February 28, 2016,

11

11:59 pm ET."  *See* Exhibit B.

59.     Under the terms of this third sale, the Fisherman Sweater was again listed at the same "valued at" price of $84.50, but was offered at a non-discounted price of $76.00.  Upon entering the provided code, customers could purchase the Fisherman Sweater for a price of $53.20 (37% off the "valued at" price).  The Striped Sweater was again listed at the same "valued at" price of $64.50, but was offered at a non-discounted price of $54.50.  Upon entering the code, customers could purchase the Striped Sweater for $38.15 (40.9% off the "valued at" price). *See id.*

60.     Accordingly, during the week following Plaintiff's purchase of the two sweaters for "30% off" – which discount Defendants claimed to be available only for a limited time – neither sweater was ever sold at its "valued at" price.  Indeed, the price of the sweaters never exceeded the purported "discounted" or "sale" price that Plaintiff paid.

61.     This is because, during the entire week following Plaintiff's purchase, Defendants held a site-wide sale every day on their online J. Crew Factory store website.  The first sale advertised "30% off" and lasted 24 hours.  The second advertised "up to 50% off everything" and lasted 24 hours.  The third advertised an "extra 30% off" everything by using a provided code and lasted 5 days.

62.     During this week, despite the variations in the three different, consecutive sales, the Fisherman Sweater was offered for sale at a price of $58.50 during the first two sales, which price dropped to $53.20 during the third sale.  The Fisherman Sweater was never offered for sale at a price higher than $58.50 – the price Plaintiff paid for the sweater – despite Defendants' representations that that price was "30% off" and a discounted sale price available only for 24 hours.

12

63.     Similarly, during this week following Plaintiff's purchase, the Striped Sweater was offered for sale at an initial price of $45.00 and thereafter at $38.50 and $38.15.  Again, the Striped Sweater was never offered for sale at a price higher than $45.00 – the price Plaintiff paid for the sweater – despite Defendants' representations that that price was "30% off" and a discounted sale price available only for 24 hours.  In fact, the price of this sweater dropped $6.50 the following day.

64.     As such, the sweaters that Plaintiff purchased were not actually on sale or discounted at all when Plaintiff purchased them, as represented by Defendants, and they certainly were not priced at "30% off."

65.     Moreover, the prices that Plaintiff paid for the sweaters were not sale or discounted prices, as represented by Defendants, but rather were the everyday, regular prices for the sweaters.

66.     Indeed, on February 29, 2016, the day after the 5-day, "extra 30% off" everything sale ended, Defendants held a rare sale that did not cover everything on their website, advertising discounts only for women's jeans, women's shirts, and men's dress shirts.  Pursuant to this sale, men's sweaters were not advertised to be on sale or discounted in any way, yet the two sweaters purchased by Plaintiff were offered at essentially the same prices Plaintiff paid for them.  *See* Exhibit C.

67.     Specifically, the Fisherman Sweater was offered at the non-sale, non-discounted price of $59.00 (although it was still "valued at" $84.50) – an increase of only 50 cents above the purported "30% off" sale price Plaintiff paid just one week prior.  The Striped Sweater was offered at the non-sale, non-discounted price of $45.00 – the identical price for which Plaintiff had purchased the sweater when it had been advertised at "30% off" one week prior.  *See id.*

68.     This further supports Plaintiffs' allegations that the prices he paid for the sweaters, which Defendants advertised to be discounted "30% off," were in fact the sweaters' everyday, regular prices.

69.     Defendants' misrepresentations about the purported limited-time, discounted prices of the sweaters were calculated and intended to, and did in fact, induce Plaintiff's purchase thereof.

70.     What happened to Plaintiff D'Aversa was not an accident or an isolated incident.

71.     Rather, it was part of a uniform policy in which Defendants engaged in a systematic scheme of false and misleading advertising, marketing, and sales practices with the purpose of persuading customers to purchase items from Defendants' online J. Crew Factory store.

72.     Defendants' specific unlawful practices include:

a.   Setting an arbitrary "valued at" price for every item on their website, which price purports to be the item's "original" or "regular" price despite the fact that no item is or was ever sold or offered for sale at this price;

b.   Continuously holding site-wide sales that advertise and purport to offer items for sale at a discount off their "valued at" prices, when the "discounted" sale prices do not actually represent the advertised savings since the items were never offered for sale at the "valued at" prices;

c.   Representing that the sale prices are available only for a limited time, when each sale is followed by another similar sale offering the same items at same or substantially similar prices; and

d.   Representing that items are on sale and offered at discounted prices when in

14

fact the items are being offered for sale at their everyday, regular prices.

73.     As described herein, the "sale" prices advertised by Defendants are not actually discounted at all, but rather are the everyday, regular prices of the items.

74.     Indeed, Defendants' purported "discounts" described herein did not exist. Rather, Defendants always sold their items at, or very close to, the "discounted" price.  As such, Defendants' allegedly reduced, "sale" price was, in fact, Defendants' regular price.

75.     These deceptive advertising, marketing, and sales practices were kept secret, and were affirmatively and fraudulent concealed from customers by Defendants throughout the class period.  As a result, Plaintiff and his fellow J. Crew Factory online store customers were unaware of Defendants' unlawful conduct alleged herein and did not know they were actually paying the everyday, regular prices for Defendants' products, rather than the advertised, purported discount prices.

76.     Plaintiff and the class members did not discover, nor could they have discovered through reasonable diligence, that Defendants were violating the law until shortly before this litigation was initially commenced, because Defendants used methods to avoid detection and to conceal their violations of the law.

77.     Defendants did not tell or otherwise inform Plaintiff or the class members that they were engaged in the deceptive advertising, marketing, and sales practices alleged herein. By their very nature, Defendants' unlawful practices were self-concealing.

78.     In sum, Defendants induced Plaintiff and the class to purchase items from Defendants' online store, for Defendants' profit, with the promise of discounts that never existed. As a result of this unlawful, deceptive conduct, Plaintiff and the class have suffered damages set forth herein.

## CLASS ACTION ALLEGATIONS

79.     **Class Definition:** Plaintiff brings this action as a class action pursuant to Rules 23(b)(2) and 23 (b)(3) of the Federal Rule of Civil Procedure, seeking damages and injunctive relief under state consumer protection statutes and common law on behalf of himself and all members of the following proposed Class:

**All United States citizens who purchased any item from Defendants' online J. Crew Factory store website between March 1, 2010 and the present.**

80.     **Sub-Class Definition:** Plaintiff brings this action as a class action pursuant to Rules 23(b)(2) and 23 (b)(3) of the Federal Rule of Civil Procedure, seeking damages and injunctive relief under state consumer protection statutes and common law on behalf of himself and all members of the following proposed Sub-Class:

**All New Jersey citizens who purchased any item from Defendants' online J. Crew Factory store website between March 1, 2010 and the present.**

81.     Each of the classes for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

82.     The exact number and identities of the persons who fit within each proposed class are contained in Defendants' records and can be easily ascertained from those records.

83.     The proposed class and subclass are each composed of at least 10,000 persons.

84.     Common questions of law and fact exist as to each class member.

85.     All claims in this action arise exclusively from uniform policies and procedures of Defendants as outlined herein.

86.     No violations alleged in this Complaint are a result of any individualized oral communications or individualized interaction of any kind between class members and Defendants or anyone else.

87.     There are common questions of law and fact affecting the rights of the class

members, including, <u>inter alia</u>, the following:

a.   whether the uniform advertising, marketing, and sales practices alleged herein exist;

b.   whether Defendants ever sold items or offered items for sale at their assigned "valued at" prices;

c.   whether Defendants' "sale" prices actually reflected the advertised savings;

d.   whether Defendants' advertised sale prices were in fact available only for the advertised limited time;

e.   whether Defendants deceptively advertised everyday, regular prices of their items as "discount" or "sale" prices;

f.   the length of time Defendants engaged in the practices alleged herein;

g.   whether the alleged practices violated state consumer protection laws;

h.   whether the alleged practices constituted a breach of contract;

i.   whether the alleged practices constituted a breach of the implied covenant of good faith and fair dealing;

j.   whether the alleged practices constituted a breach of an express warranty;

k.   whether Defendants were unjustly enriched by the alleged practices;

l.   the nature and extent of the injury to the class and the measure of class-wide damages; and

m.   whether each class is entitled to injunctive relief in the form of an order directing Defendant to send a court-approved notice to all class members, advising of the conduct alleged herein, as well as an order enjoining the conduct alleged herein and establishing a court-administered program to provide refunds of the overcharges to all such class members.

88.   Plaintiff is a member of the classes he seeks to represent.

89.   The claims of Plaintiff are not only typical of all class members, they are identical.

90.   All claims of Plaintiff and the classes arise from the same course of conduct, policy and procedures as outlined herein.

91.     All claims of Plaintiff and the classes are based on the exact same legal theories.

92.     Plaintiff seeks the same relief for himself as for every other class member.

93.     Plaintiff has no interest antagonistic to or in conflict with the classes.

94.     Plaintiff will thoroughly and adequately protect the interests of the classes, having retained qualified and competent legal counsel to represent himself and the classes.

95.     Defendant has acted and/or refused to act on grounds generally applicable to the classes, thereby making appropriate injunctive and declaratory relief for each class as a whole.

96.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual members of each class, which would confront Defendant with incompatible standards of conduct.

97.     Adjudications with respect to individual members of the classes would as a practical matter be dispositive of the interests of other members not parties to the adjudications and would substantially impair or impede their ability to protect their interests.

98.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member were not great enough to enable them to maintain separate suits against Defendants and in most, if not all, instances were less than $5,000 per person.

99.     Common questions will predominate, and there will be no unusual manageability issues.

100.     Without the proposed class action, Defendants will likely retain the benefit of their wrongdoing and will continue the complained-of practices, which will result in further damages to Plaintiff and class members.

## COUNT I

### VIOLATION OF STATE CONSUMER PROTECTION STATUTES
### (On Behalf of the Nationwide Class)

101.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

102.    The state consumer protection statutes and deceptive trade practices acts were enacted by the various states following the passage of the Federal Trade Commission Act ("FTC Act"), which prohibits deceptive acts and practices in the sale of products to consumers. The state laws in this area are modeled on the FTC Act and are therefore very similar in content and effect.

103.    Defendants' advertising, marketing, and sales practices, as set out more fully above, were unfair and deceptive, and violated the consumer protection statutes and deceptive trade practices acts of the various states, in that they:

a.      Set and advertised an arbitrary "valued at" price for every item on their website, which price was represented to be the item's "original" or "regular" price despite the fact that no item was ever sold or offered for sale at that price;

b.      Continuously advertised and held site-wide sales that purported to offer items for sale at a discount off their "valued at" prices, when the "discounted" sale prices did not actually represent the advertised savings since the items were never offered for sale at the "valued at" prices;

c.      Represented that the sale prices were available only for a limited time, when each sale was immediately followed by another, similar sale offering the same items at same or substantially similar prices;

d.      Represented that items were on sale and offered at discounted prices when in fact the items were being offered for sale at their everyday, regular prices; and

e.      Charged their customers the full, regular price for the items on their website rather than the advertised sale or discounted price.

104.    Defendants' deceptive representations of discounted sales prices impacted the consumer transactions between Defendants and Plaintiff and the class members, in that the

19

deceptive representations: (a) deceived Plaintiffs and the class members into believing that they were receiving the advertised discounts when they purchased items from Defendants' website; and (b) caused Plaintiff and the class members to purchase items from Defendants' website with the reasonable understanding that they would be receiving the advertised discounts.

105.    Plaintiff and every class member suffered an actual injury and monetary damages because they did not receive the advertised discounts on their purchases.

106.    Defendants' deceptive advertising, marketing, and sales practices described herein violated the following consumer protection statutes and deceptive trade practices acts, as well as their related administrative regulations:

a.   Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-1, *et seq.*;

b.   Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471, *et seq.*;

c.   Arizona Consumer Fraud Act, A.R.S. §§ 44-1522, *et seq.*;

d.   Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, *et seq.*;

e.   California Consumers Legal Remedy Act, Cal. Civ. Code §§ 1750, *et seq., California* Unfair Competition Law, Cal. Bus. & Prof Code §§ 17200, *et seq.,* and California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

f.   Colorado Consumer Protection Act, Col. Rev. Stat. §§ 6-1-101, *et seq.*;

g.   Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.*;

h.   Delaware Consumer Fraud Act, 6 Del. Code Ann. Tit. 6, §§ 2511, *et seq.*;

i.   Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.,* Florida Misleading Advertising Statute, Fla. Stat. § 817.41, *et seq.*;

j.   Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. §§ 10-1-370, *et seq.*, Fair Business Practices Act, Ga. Code Ann. §§ 10-1-390, *et seq.*, and False Advertising Statute, Ga. Code Ann. §§ 10-1-420, *et seq.*;

k.   Hawaii Federal Trade Commission Act, Haw Rev. Stat. §§ 480, *et seq.* and Uniform Deceptive Trade Practice Act, Hawaii Rev. Stat. §§ 481A, *et seq.*;

l.   Idaho Consumer Protection Act, Idaho Code §§ 48-601, *et seq.*;

m.  Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, *et seq.*;

n.  Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1, *et seq.*;

o.  Private Right of Action for Consumer Frauds Act, Iowa Code §§ 714H, *et seq.* and Iowa Consumer Fraud Act, Iowa Code §§ 714.16 *et seq.*;

p.  Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-623, *et seq.*;

q.  Kentucky Consumer Protection Act, K.R.S. §§ 367.110, *et seq.*;

r.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401;

s.  Maine Unfair Trade Practices Act, 5 M.R.S.A. §§ 205-A-214, *et seq.,* Uniform Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1211, *et seq.*;

t.  Maryland Consumer Protection Act, Md. Code Ann. Com. Law §§ 13-101, *et seq.*;

u.  Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. L. Ch. 93A, §§ 9, *et seq.*;

v.  Michigan Consumer Protection Act, M.C.L. §§ 445.901, *et seq.*;

w.  Minnesota Uniform Deceptive Trade Practices  Act, Minn. Stat. §§ 325 D. 44, *et seq.*, Consumer Fraud Act, Minn. Stat. § 325 F. 69, False Statement in Advertisement Statute, Minn. Stat. §325 F. 67, and Unlawful Trade Practices Act, Minn. Stat. § 325 D. 13;

x.  Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407-010, *et seq.*;

y.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. §§ 30-14-101, *et seq.* and Statutory Deceit Statute, Mont. Code Ann. § 27-1-712;

z.  Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601, *et seq.* and Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-301, *et seq.*;

aa. Nevada Deceptive Trade Statutes, Nev. Rev. Stat. §§598.0903, *et seq.*, §§ 41.600, *et seq.*;

bb. New Hampshire Regulation of Business Practices for Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358-A:1, *et seq.*;

cc. New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.*;

dd. New Mexico Unfair Trade Practices Act, N.M. Stat. §§ 57-12-1, *et seq.*;

ee. New York General Business Law §§ 349 and 350;

ff. North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.*;

gg. North Dakota Unfair Trade Practices Law, N.D. Cent. Code §§ 51-15-01, *et seq.*;

hh. Ohio Consumer Sales Practices Act, ORC §§ 1345.01, *et seq.*;

ii. Oklahoma Consumer Protection Act, Okla. Stat. Tit. 15, §§ 751, *et seq.* and Deceptive Trade Practices Act, Okla. Stat. Tit. 78, § 51, *et seq.*;

jj. Oregon Unlawful Trade Practices Act, Or. Rev. Stat. §§ 646.605, *et seq.* and Food and Other Commodities Act, Or. Rev. Stat. §§ 616.005, *et seq.*;

kk. Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1, *et seq.*;

ll. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Law §§ 6-13.1-1, *et seq.*;

mm. South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*;

nn. South Dakota Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws §§ 37-24-1, *et seq.*;

oo. Texas Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.*;

pp. Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101, *et seq.*;

qq. Utah Consumer Sales Practices Act, Utah Code Ann . §§ 13-11-1, *et seq.* and Truth in Advertising Act, Utah Code Ann. §§ 13-11a-1, *et seq.*;

rr. Vermont Consumer Fraud Act, 9 V.S.A. §§ 2451, *et seq.*;

ss. Virginia Consumer Protection Act, Va. Code §§ 59.1-196, *et seq.*;

tt. Washington Consumer Protection Act, Wash. Rev. Code Ann. §§ 19.86.010, *et. seq.*;

uu. West Virginia Consumer Credit and Protection Act, W.Va. Code §§ 46A-6-101, *et seq.*;

vv. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18(1), *et seq.*;

ww. Wyoming Consumer Protection Law, Wyo. Stat. §§ 40-12-101, *et seq.*; and

xx. District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

107. At all relevant times hereto, including at all times during the transactions

between Defendants and Plaintiff and the class members, Defendants' advertising, marketing, and sales practices were subject to these statutes.

108.    Defendants' violations of these statutes directly, foreseeably, and proximately caused damages to Plaintiffs and the nationwide class in amounts yet to be determined.

109.    Plaintiff and class members in each of the above states have been injured as a result of Defendants' unlawful advertising, marketing, and sales practices, in that they were deceived and induced into paying full price for products that Defendants represented were on sale or discounted.  These injuries are precisely the type that the above-cited laws were designed to prevent.

110.    Moreover, because Defendant's conduct described herein is a violation of 16 C.F.R. § 233.1, as set forth above, such conduct constitutes a *per se* violation of the above-cited laws.

111.    Plaintiff and the class members reasonably and justifiably expected Defendants to comply with applicable law, but Defendants failed to do so.

112.     In addition, Defendants have profited significantly from their illicit advertising, marketing, and sales practices identified herein.  Defendants' profits derived from these practices come at the expense and to the detriment of Plaintiff and the class members.

113.    As a direct and proximate result of Defendants' violations, Plaintiff and the class members have been injured and have suffered actual damages for which Defendants are liable, in an amount to be established at trial.

114.    Accordingly, Plaintiff and the class members in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by the respective jurisdiction's applicable law, and costs of suit, including

23

reasonable attorney's fees and costs, to the extent permitted by the respective state laws.

## COUNT II

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW §§ 349 and 350
### (On Behalf of the Nationwide Class)

115.     Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

116.     Plaintiff brings this claim individually and on behalf of all other nationwide class members who purchased items from Defendants' website pursuant to New York Gen. Bus. Laws § 349 ("NYGBL § 349") and § 350 ("NYGBL § 350").

117.     NYGBL § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

118.     NYGBL § 350 makes "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in New York unlawful.

119.     Defendants' advertising, marketing, and sales practices, as set out more fully above, were deceptive and false in violation of NYGBL §§ 349 and 350 in that they:

a.      Set and advertised an arbitrary "valued at" price for every item on their website, which price was represented to be the item's "original" or "regular" price despite the fact that no item was ever sold or offered for sale at that price;

b.      Continuously held site-wide sales that purported to offer items for sale at a discount off their "valued at" prices, when the "discounted" sale prices did not actually represent the advertised savings since the items were never offered for sale at the "valued at" prices;

c.      Represented that the sale prices were available only for a limited time, when each sale was immediately followed by another, similar sale offering the same items at same or substantially similar prices;

d.      Represented that items were on sale and offered at discounted prices when in fact the items were being offered for sale at their everyday, regular prices; and

e.      Charged their customers the full, regular price for the items on their website rather than the advertised sale or discounted price.

120.     These deceptive advertising, marketing, and sales practices originated from and were performed at Defendants' headquarters in New York, and therefore were the products of "business, trade or commerce" in New York.  Indeed, Defendants operate their J. Crew Factory store website out of their headquarters in New York; thus, all of the advertising and sale of items on or from Defendants' website occurred in New York.

121.     Plaintiff seeks to enjoin these unlawful, deceptive practices on behalf of himself and the nationwide class.

122.     As described herein, there was a causal connection between Defendants' deceptive conduct and the injuries to Plaintiff and the nationwide class.

123.     Plaintiff and each nationwide class member were intended victims of Defendants' deceptive conduct alleged herein.

124.     Plaintiff and each nationwide class member were injured in fact and lost money as a result of Defendants' deceptive conduct.

125.     Plaintiff and each nationwide class member have been deprived of the benefit of their bargain, which is a valid measure of loss under New York law, in that they received something less than what was advertised on Defendants' website – Defendants represented that Plaintiff and the class were paying a discounted, sale price for the items they purchased, when in fact they were paying the everyday, regular price.

126.     Plaintiff and each nationwide class member believed Defendants' misrepresentations that the items they purchased were in fact on sale and being offered at discounted prices, and would not have purchased such items had they known that Defendants' advertisements were false.

127.     Moreover, the Court can presume such reliance under the circumstances of the

case at bar, because the false statements regarding the prices of the items were placed by Defendants on their website for the purpose of inducing the purchase of such items, as part of a course of conduct intended to deceive Plaintiff and the class members.

128. Consequently, the conduct of Defendants as alleged herein constitutes deceptive acts and practices in violation of NYGBL § 349, and Defendants are liable to Plaintiff and each nationwide class member for not less than $50.00 per person.

129. The conduct of Defendants as alleged herein also constitutes false advertising in violation of NYGBL § 350, and Defendants are liable to Plaintiff and each nationwide class member for not less than $500.00 per person.

130. Plaintiff and the nationwide class seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief prohibiting Defendants from continuing to disseminate its false and misleading statements and conduct the aforementioned practices, and for other relief allowable under NYGBL §§ 349 and 350.

## COUNT III

**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
**N.J.S.A. 56:8-1, *et seq.***
**(On Behalf of the New Jersey Subclass)**

131. Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

132. Plaintiff brings this claim individually and on behalf of all other New Jersey Subclass members who were customers of Defendants' online J. Crew Factory store.

133.    The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* (the "NJCFA"), applies to all sales made by Defendants to New Jersey consumers from Defendants' J. Crew Factory store website.

134.    The NJCFA was enacted to protect consumers against sharp and unconscionable commercial practices by persons engaged in the sale of goods or services.  *See Marascio v. Campanella*, 689 A.2d 852, 857 (N.J. Ct. App. 1997).

135.    The NJCFA is a remedial statute which the New Jersey Supreme Court has repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes.  *See Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 441 (N.J. 2004) ("The [NJCFA] is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public.").

136.    "The available legislative history demonstrates that the [NJCFA] was intended to be one of the strongest consumer protection laws in the nation."  *New Mea Const. Corp. v. Harper*, 497 A.2d 534, 543 (N.J. Ct. App. 1985).

137.    For this reason, the "history of the [NJCFA] is one of constant expansion of consumer protection."  *Kavky v. Herbalife Int'l of Am.*, 820 A.2d 677, 681-82 (N.J. Ct. App. 2003).

138.    The NJCFA was intended to protect consumers "by eliminating sharp practices and dealings in the marketing of merchandise and real estate."  *Lemelledo v. Beneficial Mgmt. Corp.*, 696 A.2d 546, 550 (N.J. 1997).

139.    Specifically, N.J.S.A. 56:8-2 prohibits "unlawful practices, ..." which are defined as:

> **The act, use or employment of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing,**

**concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission whether or not any person bas in fact been misled, deceived or damaged thereby.**

140.    The catch-all term "unconscionable commercial practice" was added to the NJCFA by amendment in 1971 to ensure that the Act covered, *inter alia*, "incomplete disclosures." *Skeer v. EMK Motors, Inc.*, 455 A.2d 508, 512 (N.J. Ct. App. 1982).

141.    In describing what constitutes an "unconscionable commercial practice," the New Jersey Supreme Court has noted that it is an amorphous concept designed to establish a broad business ethic. *See Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994).

142.    In order to state a cause of action under the NJCFA, a plaintiff does not need to show reliance by the consumer. *See Varacallo v. Massachusetts Mut. Life Ins. Co.*, 752 A.2d 807 (N.J. App. Div. 2000); *Gennari v. Weichert Co. Realtors*, 691 A.2d 350 (N.J. 1997) (holding that reliance is not required in suits under the NJCFA because liability results from "misrepresentations whether 'any person has in fact been misled, deceived or damaged thereby").

143.    Rather, the NJCFA requires merely a causal nexus between the false statement and the purchase, not actual reliance. *See Lee*, *supra*, 4 A.3d at 579 ("causation under the [NJCFA] is not the equivalent of reliance").

144.    As stated by the New Jersey Supreme Court in *Lee*, *supra*, 4 A.3d at 580, "It bears repeating that the [NJCFA] does not require proof of reliance, but only a causal connection between the unlawful practice and ascertainable loss."

145.    By the acts alleged herein, Defendants have violated the NJCFA.  Specifically, Defendants:

a.      Set an arbitrary "valued at" price for every item on their website, which price was represented to be the item's "original" or "regular" price despite the fact that no item was ever sold or offered for sale at that price;

b.      Continuously held site-wide sales that purported to offer items for sale at a

discount off their "valued at" prices, when the "discounted" sale prices did not actually represent the advertised savings since the items were never offered for sale at the "valued at" prices;

c.     Represented that the sale prices were available only for a limited time, when each sale was immediately followed by another, similar sale offering the same items at same or substantially similar prices;

d.     Represented that items were on sale and offered at discounted prices when in fact the items were being offered for sale at their everyday, regular prices; and

e.     Charged their customers the full, regular price for the items on their website rather than the advertised sale or discounted price.

146.    These uniform practices by Defendants constitute sharp and unconscionable commercial practices relating to the sale of goods in violation of the NJCFA, N.J.S.A. § 56:8-1, *et seq.*

147.    As alleged herein, Defendant has engaged in deceptive conduct which creates a likelihood of confusion or misunderstanding.

148.    These actions also constitute "omission[s] of any material fact with intent that others rely upon such concealment," as Defendants did not inform Plaintiff and the class members that the items offered for sale on their website were not actually discounted at all, but rather were being sold at their everyday, regular prices.  Defendants purposefully omitted this information so that their customers would believe that they were getting a discounted price on the items they purchased from Defendants, when in fact they were not.

149.    As such, Defendants have acted with knowledge that its conduct was deceptive and with intent that such conduct deceive purchasers.

150.    Moreover, because Defendant's conduct described herein is a violation of 16 C.F.R. § 233.1, such conduct constitutes a *per se* violation of the CFA, N.J.S.A. § 56:8-1, et seq.

151.    Plaintiff and the class members reasonably and justifiably expected Defendants to comply with applicable law, but Defendants failed to do so.

152. As a direct and proximate result of these unlawful actions by Defendants, Plaintiff and the New Jersey Subclass have been injured and have suffered an ascertainable loss of money.

## COUNT IV

**VIOLATION OF THE NEW JERSEY TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT, N.J.S.A. § 56:12-14, *et seq.***
**(On Behalf of the New Jersey Subclass)**

153. Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

154. Plaintiff brings this claim individually and on behalf of all other New Jersey Subclass members who were customers of Defendants' online J. Crew Factory store.

155. Plaintiff and the New Jersey Subclass are "consumers" within the meaning of N.J.S.A. §§ 56:12-15 and 16.

156. Defendants are "sellers" within the meaning of N.J.S.A. §§ 56:12-15 and 16.

157. The advertisements and representations on Defendants' website, stating, *e.g.*, that the items on the website are being offered for sale at a discounted price, is both a consumer "notice" and "warranty" within the meaning of N.J.S.A. §§ 56:12-15 and 16.

158. By the acts alleged herein, Defendants have violated N.J.S.A. § 56:12-16 because, in the course of Defendants' business, Defendants have offered written consumer notices and warranties to Plaintiff and the New Jersey Subclass which contained provisions that violated their clearly established legal rights under state law and federal regulations, within the meaning of N.J.S.A. § 56:12-15.

159. Specifically, the clearly established rights of Plaintiff and the New Jersey Subclass under state law include the right not to be subjected to unconscionable commercial

practices and false written affirmative statements of fact in the sale of goods, as described herein, which acts are prohibited by the NJCFA, N.J.S.A. § 56:8-2.

160.    Further, the clearly established rights of Plaintiff and the New Jersey Subclass under federal law include the right not to be subjected to false advertising in violation of 16 C.F.R. § 233.1.

161.    Pursuant to N.J.S.A. § 56:12-17, Plaintiff seeks a statutory penalty of $100 for each New Jersey Subclass member, as well as actual damages and attorneys' fees and costs.

## COUNT V

### BREACH OF CONTRACT
**(On Behalf of the Nationwide Class and New Jersey Subclass)**

162.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

163.    Plaintiff and the class members entered into contracts with Defendants.

164.    The contracts provided that Plaintiff and the class members would pay Defendants for their products.

165.    The contracts further provided that Defendants would provide Plaintiff and the class members a specific discount on the price of their purchases.  This specified discount was a specific and material term of each contract.

166.    Plaintiff and the class members paid Defendants for the products they purchased, and satisfied all other conditions of the contracts.

167.    Defendants breached the contracts with Plaintiff and the class members by failing to comply with the material term of providing the promised discount, and instead charged Plaintiff and the class members the full price of the products they purchased.

168.    As a direct and proximate result of Defendants' breach, Plaintiff and the class

members have been injured and have suffered actual damages in an amount to be established at trial.

## COUNT VI

**BREACH OF CONTRACT UNDER THE IMPLIED COVENANT
OF GOOD FAITH AND FAIR DEALING
(On Behalf of the Nationwide Class and New Jersey Subclass)**

169.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

170.    There was no written contract between Defendants and their customers, including Plaintiff and the class members.

171.    Rather, by operation of the law of each state, there existed an implied contract for the sale of goods between each customer who purchased items from Defendants' J. Crew Factory store website.

172.    By operation of the law of each state, there also existed an implied duty of good faith and fair dealing in each such contract.

173.    By the acts alleged herein, Defendants have violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendant and each class member.

174.    Specifically, it was a violation of the duty of good faith and fair dealing for Defendants to represent that the items on their website were discounted when in fact they were offered for sale at their regular prices, and to charge Plaintiff and class members the regular prices for such items instead of the advertised, discounted prices.

175.    As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff and the class members have been injured and have suffered actual damages in an amount to be established at trial.

<u>COUNT VII</u>

**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class and New Jersey Subclass)**

176.     Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

177.     Plaintiff and the class members formed contracts with Defendants at the time they purchased items from Defendants' website.   The terms of such contracts included the promises and affirmations of fact made by Defendants through their marketing campaign, as alleged herein, including, but not limited to, representing that the items for sale on Defendants' J. Crew Factory website were being discounted.

178.     This product advertising constitutes express warranties, became part of the basis of the bargain, and is part of the contracts between Defendants and Plaintiff and the class members.

179.     The affirmations of fact made by Defendants were made to induce Plaintiff and the class members to purchase items from Defendants' website.

180.     Defendants intended that Plaintiff and the class members would rely on those representations in making their purchases, and Plaintiff and the class members did so.

181.     All conditions precedent to Defendants' liability under these express warranties have been fulfilled by Plaintiff and the class members in terms of paying for the goods at issue, or have been waived.   Defendants had actual and/or constructive notice of their own false advertising, marketing, and sales practices but to date have taken no action to remedy their breaches of express warranty.

182.     Defendants breached the terms of the express warranty because the items purchased by Plaintiff and the class members did not conform to the description provided by

Defendants – that they were being sold at a discounted price.  In fact, they were not.

183.     As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and the class members have been injured and have suffered actual damages in an amount to be established at trial.

<u>COUNT VIII</u>

**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class and New Jersey Subclass)**

184.     Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

185.     This claim is asserted in the alternative to a finding of breach of contract.  This claim asserts that it is unjust to allow Defendants to retain profits from their deceptive, misleading, and unlawful conduct alleged herein.

186.     Plaintiff and the class were charged by – and paid – Defendants for the items they purchased from Defendants' website.  Consequently, Plaintiffs and the Class have conferred substantial benefits on Defendants by purchasing the items, and Defendants have knowingly and willingly accepted and enjoyed these benefits.

187.     Defendants represented that these items were discounted, with the specific intent that such representation would induce customers to purchase said items.

188.     As detailed herein, the items purchased by Plaintiff and the class members were not discounted.

189.     Because the items were advertised as being discounted when they actually were not, Defendants collected more money than they would have if the items were discounted as promised.

190.     As a result of these complained-of actions by Defendants, Defendants received

benefits under circumstances where it would be unjust for them to retain those benefits.

191.    Defendants have knowledge or an appreciation of the benefit conferred upon them by Plaintiff and the class members.

192.    Equity demands disgorgement of Defendants' ill-gotten gains.  Defendants will be unjustly enriched unless Defendants are ordered to disgorge those profits for the benefit of Plaintiff and the class members.

193.    Plaintiff and the class members are entitled to restitution and/or disgorgement of all profits, benefits, and other compensation obtained and retained by the Defendants from their deceptive, misleading, and unlawful conduct described herein.

## COUNT IX

### NEGLIGENT MISREPRESENTATION
**(On Behalf of the Nationwide Class and the New Jersey Subclass)**

194.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

195.    Defendants have negligently represented that the items offered for sale on their J. Crew Factory store website are discounted, when in fact they are not.

196.    This is a material fact that Defendants have misrepresented to the public, including Plaintiff and the Class Members.

197.    Defendants know that the prices of the items offered for sale on their website – and specifically whether such prices are discounted or sale prices – are material to the reasonable consumer, and Defendants intend for consumers to rely upon such misstatements when choosing to purchase items from their website.

198.    Defendants knew or should have known that these misstatements or omissions would materially affect Plaintiff's and the class members' decisions to purchase items from their website.

199.    Plaintiff and other reasonable consumers, including the class members, reasonably relied on Defendants' representations set forth herein, and, in reliance thereon, purchased items from Defendants' website.

200.    The reliance by Plaintiff and the class members was reasonable and justified in that Defendants appeared to be, and represented themselves to be, a reputable business.

201.    Plaintiff and the class members would not have been willing to pay for the items they purchased, or would not have paid what they paid for the items they purchased, if they knew that such items were not in fact discounted from their everyday, regular prices.

202.    As a direct and proximate result of Defendants' misrepresentations, Plaintiff and the class members were induced to purchase items from Defendants' website, and have suffered damages to be determined at trial, in that, among other things, they have been deprived of the benefit of their bargain in that they bought a items that were purported to be discounted, when in fact they were not.

203.    Plaintiffs seek all available remedies, damages, and awards as a result of Defendants' negligent misrepresentations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered in favor of Plaintiff and the class against Defendants as follows:

A.      Enter an order certifying the proposed Class, designating Plaintiffs as the

36

Class representatives, and designating the undersigned as Class counsel;

        B.      Declare that Defendants are financially responsible for notifying all Class members of their deceptive advertising, sales, and marketing practices alleged herein;

        C.      Declare that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from their deceptive advertising, sales, and marketing practices alleged herein, or order Defendants to make full restitution to Plaintiffs and the members of the Class;

        D.      Find that Defendants' conduct alleged herein be adjudged and decreed in violation of the state laws cited above;

        E.      Grant economic and compensatory damages on behalf of Plaintiff and all members of the Class, to the maximum extent permitted by applicable law;

        F.      Grant punitive or exemplary damages as permitted by law;

        G.      Grant the requested injunctive and declaratory relief;

        H.      Award interest as permitted by law;

        I.      Grant reasonable attorneys' fees and reimbursement all costs incurred in the prosecution of this action; and

        J.      Grant such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of himself and all others similarly situated, demands a trial by jury on all questions of fact raised by the complaint.


Date:   March 1, 2016


PARIS ACKERMAN & SCHMIERER LLP

By: _____
          Ross H. Schmierer, Esq.
          1200 Avenue of the Americas
          Third Floor
          New York, NY 10036
          (T): (212) 354-0030
          (F): (973) 629-1246
          ross@paslawfirm.com

and

DeNITTIS OSEFCHEN, P.C.
Stephen P. DeNittis, Esq.
Joseph A. Osefchen, Esq.
Shane T. Prince, Esq.
*Pro Hac Vice Pending*
5 Greentree Centre
525 Route 73 North, Suite 410
Marlton, NJ 08053
Tel.:  (856) 797-9951
Fax:  (856) 797-9978

*Attorneys for Plaintiff and the Putative Class*