**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH A. D'AVERSA, on behalf of himself and all others similarly situated,<br><br>         Plaintiff,<br><br>    v.<br><br>J. CREW GROUP, INC.; J. CREW OPERATING CORP.; J. CREW, INC.; J. CREW INTERNATIONAL, INC.; CHINOS HOLDINGS, INC.; CHINOS INTERMEDIATE HOLDINGS A, INC.; and CHINOS INTERMEDIATE HOLDINGS B. INC.,<br><br>         Defendants. | Civil Action No. 1:16-cv-01590-DLC |

### <u>MEMORANDUM IN SUPPORT OF J. CREW'S MOTION PURSUANT TO FED. R. CIV. P. 12(g) TO DISMISS AND TO STRIKE</u>

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   PLAINTIFF'S COMPLAINT .............................................................................2

    A.    What the Complaint Alleges ....................................................................2

    B.    What the Complaint Fails to Allege.........................................................4

        1.    Information About the Website ....................................................4

        2.    Information about D'Aversa's Own Beliefs and Motivations....................5

    C.    Legal Contentions ....................................................................................6

III.  ARGUMENT ......................................................................................................6

    A.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1):  Plaintiff Has Sustained
        No Injury Fairly Traceable to J. Crew Factory ........................................6

        1.    Rule 12(b)(1) Requires Dismissal Where the Pleadings or
            Evidence Demonstrate That the Court Lacks Subject Matter
            Jurisdiction ..................................................................................6

        2.    Extrinsic Evidence and the Allegations of the Complaint
            Demonstrate Plaintiff Lacks Standing .........................................7

        3.    Plaintiff Lacks Standing Under the Law of Any State But
            New Jersey ...................................................................................8

    B.    Rule 12(b)(6):  Plaintiff's Complaint Fails to State a Claim ...................9

        1.    Plaintiff Must Plead Facts Under Rules 8 and 9(b) to Show
            Entitlement to Relief ....................................................................9

        2.    Plaintiff Pleads No Facts to Support His Interpretation of
            "Valued At" ................................................................................10

        3.    Count I Fails to State a Claim Under the Various State
            Consumer Laws .........................................................................10

        4.    Plaintiff Has Not Stated A Claim Under GBL §349 and §350.................11

            (a)    Plaintiff Has Not Sustained Any Cognizable Injury....................11

            (b)    Plaintiff Cannot Invoke New York's GBL 349 and 350 for
                a Transaction that Occurred in New Jersey ...................13

5.    Plaintiff Has Not Stated a Claim under the N.J. Consumer
Fraud Act ..................................................................................14

    (a)    Plaintiff Has Failed to Allege Sufficient Facts to Support
His Claim that Defendants Engaged in Unlawful Conduct ...........15

    (b)    Plaintiff Fails to Allege Facts to Demonstrate
Ascertainable Loss ......................................................16

6.    Plaintiff's TCCWNA Claim Therefore Also Fails ...................................18

7.    The Complaint Does Not Reveal Any Breach of Contract.......................19

8.    Plaintiff Also Fails to State a Claim for Breach of Contract Under
the Implied Covenant of Good Faith and Fair Dealing............................20

9.    Plaintiff's Breach of Express Warranty Claim Fails Because
No Express Warranty Existed....................................................20

10.   Plaintiff's Unjust Enrichment Claim Also Fails .......................................21

11.   Plaintiff Fails to State a Claim for Negligent Misrepresentation.............21

C.    Rules 12(f), 23(d)1(D):  Plaintiff's Nationwide Class Claims Should
Be Stricken...............................................................................22

IV.    CONCLUSION............................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

*Adamson v. Ortho-McNeil Pharm., Inc.*
    463 F. Supp. 2d 496 (D.N.J. 2006) ........................................................................ 21

*Alloway v. Gen. Marine Indus.*
    149 N.J. 620 (1997) ................................................................................................ 22

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*
    671 F.3d 140 (2d Cir. 2011) .................................................................................... 6

*Arcand v. Brother Intl Corp.*
    673 F. Supp. 2d 282 (D.N.J. 2009) ........................................................................ 17

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................................................ 9, 10

*Baron v. Pfizer, Inc.*
    42 A.D.3d 627 (N.Y. App. Div. 3d Dep't 2007) ...................................................... 12

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................................................ 9, 10

*Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*
    228 F.3d 275 (3d Cir. 2000) .................................................................................... 20

*Blum v. Yaretsky*
    457 U.S. 991 (1982) ................................................................................................ 8

*Cargill Global Trading v. Applied Development Co.*
    706 F. Supp. 2d 563 (2009) .................................................................................... 19

*Chrysler Capital Realty Inc. v. Grella*
    1990 WL 67404 (S.D.N.Y. May 17, 1990) ............................................................ 25

*City of New York v. Smokes-Spirits.Com, Inc.*
    12 N.Y.3d 616 (2009) ............................................................................................ 11

*Clapper v. Amnesty Int'l USA*
    133 S. Ct. 1138 (2013) ............................................................................................ 7

*Cole v. General Motors*
    484 F.3d 717 (5th Cir. 2007) .............................................................................. 23, 24

*DaimlerChrysler Corp. v. Cuno*
    547 U.S. 332 (2006) ................................................................................................ 8

*Davito v. AmTrust Bank*
    743 F. Supp. 2d 114 (E.D.N.Y. 2010) .................................................................... 22

*Diamond v. Charles*
    476 U.S. 54 (1986)........................................................................... 7

*Dimond v. Darden Rests., Inc.*
    2014 WL 3377105 (S.D.N.Y. July 9, 2014) ................................. 12

*Duquesne Light Co. v. Westinghouse Elec. Co.*
    66 F.3d 604 (3d Cir. 1995).......................................................... 22

*Edin v. Kangadis Food Inc.*
    2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ............................. 12

*Ensey v. Gov't Employers Ins. Co.*
    2013 WL 5963113 (D.N.J. Nov. 7, 2013) .................................... 19

*F.D.I.C. v. Bathgate*
    27 F.3d 850 (3d Cir. 1994)............................................................ 9

*Frederico v. Home Depot*
    507 F.3d 188 (3d Cir. 2007)........................................................ 19

*Gallop v. Cheney*
    642 F.3d 364 (2d Cir. 2011)......................................................... 9

*Gen. Tel. Co. of Sw. v. Falcon*
    457 U.S. 147 (1982)..................................................................... 22

*Goshen v. Mut. Life Ins. Co.*
    98 N.Y.2d 314 (N.Y. 2002) .................................................. 13, 14

*Gristede's Foods, Inc. v. Unkechaunge Nation*
    532 F. Supp. 2d 439 (E.D.N.Y. 2007) ........................................ 11

*Gunther v. Capital One, N.A.*
    703 F. Supp. 2d 264 (E.D.N.Y. 2010) .......................................... 9

*H. Rosenblum, Inc. v. Adler*
    93 N.J. 324 (1983) ...................................................................... 21

*Hoffman v. Cogent Sols. Grp., LLC*
    2013 WL 6623890 (D.N.J. Dec. 16, 2013) ................................. 21

*Hoffman v. Hampshire Labs, Inc.*
    963 A.2d 849 (N.J. App. Div. 2009)...................................... 14, 18

*Hoffman v. Macy's Inc.*
    2009 WL 10266572 (N.J. Sup. Ct. July 17, 2009)................... 15, 16

*Hoffman v. Macy's, Inc.,* 2011 WL 6585 (N.J. Super. Ct. App. Div. June 28, 2010) ........... 15, 16

*In re Allstate Ins. Co. (Stolarz)*
    81 N.Y.2d 219 (1993) ................................................................. 24

*In re Aqua Dots Prod. Liab. Litig.*
    654 F.3d 748 (7th Cir. 2011) ................................................................. 23, 24

*In re Cheerios Mktg. & Sales Practices Litig.*
    2012 WL 3952069 (D.N.J. Sept. 10, 2012) ........................................... 21

*In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*
    2012 WL 379944 (D.N.J. Feb. 6, 2012) ................................................. 7

*In re Grand Theft Auto Video Game Consumer Litigation*
    251 F.R.D. 139 (S.D.N.Y. 2008) ........................................................... 24, 25

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*
    1 F. Supp. 3d 34 (E.D.N.Y. 2014) ......................................................... 9

*In re St. Jude Medical, Inc.*
    425 F.3d 1116 (8th Cir. 2005) ............................................................... 23, 24

*In re Yasmin & Yaz Mktg., Sales Practices & Relevant Prods. Liab. Litig.*
    275 F.R.D. 270 (S.D. Ill. 2011) ............................................................. 23

*Indian Brand Farms, Inc. v. Novartis Corp. Prot., Inc.*
    617 F.3d 207 (3d Cir. 2010) .................................................................. 14

*Jaffe v. Capital One Bank*
    2010 WL 691639 (S.D.N.Y. Mar. 1, 2010) ........................................... 22

*Jurgensen v. Felix Storch, Inc.*
    2012 WL 2354247 (S.D.N.Y. June 14, 2012) ....................................... 8

*Jurista v. Amerinox Processing, Inc.*
    492 B.R. 707 (D.N.J. 2013) ................................................................... 21

*Kajoshaj v. New York City Dep't of Educ.*
    543 F. App'x 11 (2d Cir. 2013) ............................................................. 9

*Kaufman v. Sirius XM Radio, Inc.*
    474 Fed. Appx. 5 (2d. Cir. 2012) .......................................................... 14

*Kim v. Carter's Inc.*
    598 F.3d 362 (7th Cir. 2010) ................................................................. 13

*Klaxon Co. v. Stentor Elec. Mfg. Co.*
    313 U.S. 487 (1941) .............................................................................. 24

*Lieberson v. Johnson & Johnson Consumer Cos.*
    865 F. Supp. 2d 529 (D.N.J. 2011) ....................................................... 17

*Lite Co. v. GS 1 US, Inc.*
    2007 WL 5035772 (W.D.N.Y. June 18, 2007) ...................................... 25

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) .............................................................................. 7

*Mahfood v. QVC, Inc.*
  2007 WL 9363986 (C.D. Cal. Feb. 7, 2007).................................................................. 10

*Makarova v. United States*
  201 F.3d 110 (2d Cir. 2000)............................................................................................ 6

*Marrin v. Capital Health Sys., Inc.*
  2015 WL 404783 (D.N.J. Jan. 29, 2015) ...................................................................... 9

*Maryland Cas. Co. v. Cont'l Cas. Co.*
  332 F.3d 145 (2d Cir. 2003).......................................................................................... 24

*Mazza v. Am. Honda Motor Co.*
  666 F.3d 581 (9th Cir. 2012) .................................................................................. 23, 24

*Mladenov v. Wegmans Food Markets, Inc.*
  124 F. Supp. 3d 360 (D.N.J. 2015) ......................................................................... 9, 19

*Mulder v. Kohl's Department Stores, Inc.*
  2016 WL 393215 (D. Mass. Feb. 2, 2016) ................................................................. 13

*Mulligan v. QVC, Inc.*
  382 Ill.App.3d 620 (Ill. App. Ct. 2008) ..................................................................... 13

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*
  710 F.3d 71 (2d Cir. 2013)............................................................................................. 7

*New Jersey Citizen Action v. Schering-Plough Corp.*
  842 A.2d 174 (App. Div. 2003) ................................................................................... 14

*Nolan v. Control Data Corp.*
  243 N.J.Super. 420 (App. Div. 1990) .......................................................................... 19

*Pactiv Corp. v. Perk-Up, Inc.*
  2009 WL 2568105 (D.N.J. Aug. 18, 2009) ................................................................. 20

*Parks v. Dick's Sporting Goods, Inc.*
  2006 WL 1704477 (W.D.N.Y. June 15, 2006) ............................................................. 9

*Pilgrim v. Universal Health Card*
  660 F.3d 943 (6th Cir. 2011) ...................................................................................... 23

*Pireilli Armstrong Tire Co. v. Walgreen Co.*
  2009 WL 2777995 (N.D. Ill. Aug. 31, 2009) ............................................................. 11

*Preira v. Bancorp Bank*
  885 F. Supp. 2d 672 (S.D.N.Y. 2012) ......................................................................... 11

*Rahman v. Smith & Wollensky Rest. Grp.*
  2008 WL 161230 (S.D.N.Y. Jan. 16, 2008) ............................................................... 22

*Romano v. Galaxy Toyota*
  945 A.2d 49 (N.J. Super. Ct. App. Div. 2008)............................................................ 17

*Route v. Mead Johnson Nutrition Co.*
    2013 WL 658251 (C.D. Cal. Feb. 21, 2013)................................................ 23

*Servedio v. State Farm Ins. Co.*
    889 F. Supp. 2d 450 (E.D.N.Y. 2012)....................................................... 12

*Shaulis v. Nordstrom Inc.*
    120 F. Supp. 3d 40 (D. Mass. 2015) ........................................................ 13

*Simington v. Lease Fin. Grp., LLC*
    2012 WL 651130 (S.D.N.Y. Feb. 28, 2012)................................................ 8

*Small v. Lorillard Tobacco Co.*
    720 N.E.2d 892 (N.Y. 1999) .............................................................. 11, 12

*Snyder v. Farnam Companies, Inc.*
    792 F. Supp. 2d 712 (D.N.J. 2011) .......................................................... 20

*Sokoloff v. Town Sports Int'l Inc.*
    6 A.D.3d 185 (N.Y. App. Div. 1st Dep't 2004)........................................... 12

*Sons of Thunder, Inc. v. Borden, Inc.*
    148 N.J. 396 (1997) .......................................................................... 20

*St. Pierre v. Dyer*
    208 F.3d 394 (2d Cir. 2000)................................................................... 7

*State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*
    646 F. Supp. 2d 668 (D.N.J. 2009) .......................................................... 22

*Szczubelek v. Cendant Mortgage Corp.*
    215 F.R.D. 107 (D.N.J. 2003)................................................................ 21

*Temple v. Circuit City Stores, Inc.*
    2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007) ............................................ 9

*Thiedemann v. Mercedes-Benz USA*
    872 A.2d 783 (N.J. 2005) ................................................................ 16, 17

*Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*
    655 A.2d 417 (N.J. 1995) ................................................................ 15, 16

*Waldron v. Jos. A. Bank Clothiers, Inc.*
    No. 12-CV-02060 (D.N.J. Jan. 28, 2013) ........................................... 16, 17, 18

*Walsh v. Ford Motor Co.*
    807 F.2d 1000 (D.C. Cir. 1986) .............................................................. 23

*Watkins v. DineEquity, Inc.*
    591 Fed. Appx 132 (3d Cir. 2014) ........................................................... 19

*Weinberg v. Sprint Corp.*
    173 N.J. 233, 249, 801 A.2d 281, 291 (2002)............................................. 16

*Wilson v. Kia Motors Am., Inc.*
    2015 WL 3903540 (D.N.J. June 25, 2015) ...................................................................... 19

## STATUTES

16 C.F.R. §233.1 ...................................................................................................... 6, 15

29 Fed. Reg. 178 (1964) .......................................................................................... 15

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 1, 6

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1, 9

Fed. R. Civ. P. 12(f) ............................................................................................... 2, 22

Fed. R. Civ. P. 12(g) .................................................................................................. 1

Fed. R. Civ. P. 23(c)(1) ............................................................................................ 22

Fed. R. Civ. P. 23(d)(1)(D) ..................................................................................... 2, 22

Fed. R. Civ. P. 8 ......................................................................................................... 9

Fed. R. Civ. P. 9(b) ....................................................................................... 9, 10, 11, 21

N.J. Stat. Ann. §12A:2–313 ...................................................................................... 20

N.J. Stat. Ann. §12A:2–313(2) .................................................................................. 21

N.J.S.A. 56.8-1, *et. seq.* ........................................................................................ passim

New York GBL §349 .............................................................................................. passim

New York GBL §349(h) ............................................................................................. 11

New York GBL §350 ......................................................................................... 6, 11, 13

New York GBL §350-e(3) .......................................................................................... 11

## OTHER AUTHORITIES

http://www.merriam-webster.com/dictionary/value ...................................................... 10

## MEMORANDUM IN SUPPORT OF J. CREW'S MOTION PURSUANT TO FED. R. CIV. P. 12(g) TO DISMISS AND TO STRIKE

## I.      INTRODUCTION

This case is not about consumer deception, or confusion about J. Crew's "valued at" pricing.  Rather, it is about purchasing behavior driven by Mr. D'Aversa's desire to bring a lawsuit.  According to his Complaint, Marlton, New Jersey attorney Joseph A. D'Aversa visited J. Crew Factory's website on a daily basis, beginning on the date of his purchase, February 22, 2016, and continuing for a week thereafter, to monitor the terms on which J. Crew Factory offered items to the public.  D'Aversa alleges that J. Crew misled him into believing that he had obtained a more significant price discount than he really received.  In fact, it appears that he believed this before he even bought the sweaters.  The circumstances of his purchase, and the behavior described in his Complaint, expose his purchases as the result of a premeditated plan to file a lawsuit, not innocent consumer confusion.  Indeed, where a disappointed customer might simply have invoked his right to a full refund, as provided by J. Crew's refund policy, Mr. D'Aversa initiated forthwith a putative nationwide class action in Federal Court seeking disgorgement of profits, statutory damages of up to $500/person, full restitution, injunctive relief, declaratory judgment, and punitive damages.

The J. Crew entities respectfully move pursuant to Fed. R. Civ. P. 12(g) for dismissal of Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) and (b)(6).  A fair reading of the Complaint demonstrates that Plaintiff bought his sweaters because he wanted to buy a lawsuit, not because J. Crew misled him.  He has sustained no injury fairly traceable to J. Crew's conduct, and therefore lacks standing under Article III.  And even if this were not the case, Plaintiff has not pled facts to support his interpretation of what "valued at" meant; to show any damage or ascertainable loss; or to state any other claim under New York or New Jersey law.  In the alternative, the J. Crew entities

respectfully request that this Court strike the nationwide class allegations from the Complaint pursuant to Fed. R. Civ. P. 12(f) and 23(d)(1)(D).

## II.    PLAINTIFF'S COMPLAINT

### A.    What the Complaint Alleges

Plaintiff filed this 38 page, nine count Complaint on March 1, 2016—revealingly expeditious considering that he purchased the sweaters a mere eight days before.  (Compl. ¶¶ 50-55.) The allegations of the Complaint compel an inference that D'Aversa bought his sweaters *because* he wanted to file a lawsuit, not because J. Crew deceived him.  It is simply not plausible that D'Aversa could have purchased these sweaters, monitored the website daily for a week, and then found lawyers who could prepare and file (one day later) a lengthy Complaint invoking the laws of all fifty states, unless he knew *before* he bought the sweaters that he would bring this lawsuit.

Mr. D'Aversa is a resident and citizen of New Jersey.  (Compl. ¶ 11.)  Prior to February 22, 2016, D'Aversa does not appear to have ever made an online purchase from J. Crew or J. Crew Factory.  (*See* Declaration of Brittany Sydnor, ¶ 3.)  Nevertheless, he alleges that, on that date, he visited the J. Crew Factory website and bought two sweaters—a Factory Fisherman Crewneck Sweater for $58.50, and a Factory Striped Crewneck Sweater for $45.00.  (Compl. ¶¶ 50-53.) He allegedly bought the sweaters "in order to take advantage of the advertised 30% discounts" off the "valued at" price.  (Compl. ¶¶ 50-51.)  He asserts that the "valued at" price "purports to be the 'original' or 'regular price' of that item."  (Compl. ¶¶ 28, 32.)  He contends that these "valued at" prices are fabricated, that items are never sold for the "valued at" price, and that J. Crew Factory sales are really just everyday prices.  (Compl. ¶¶ 40-44, 47-48, 73-74.)

D'Aversa's Complaint reveals that he has been monitoring the J. Crew Factory website assiduously.  On the date of purchase, he had the presence of mind to note that "[a]ccording to Defendants' website, the '30% off' order was valid only 'on February 22, 2016, 12:01 am ET

through 11:59 pm ET.'" (Compl. ¶ 54, internal quotations in original.) As the sale only lasted a day, he knew he was recording an evidentiary fact even as he was making this, his first purchase ever, on the J. Crew Factory website.

The very next day after his purchase, on February 23, 2016, D'Aversa visited the website again, and carefully noted that the sales terms that day were "up to 50% off everything" and that the sale was valid only "on February 23, 2016, 12:01 am ET through 11:59 pm ET." (Compl. ¶ 56, internal quotations in original.) This time, he even printed the web page. (*See* Complaint, Exhibit A.) Under the February 23, 2016 sales terms, his Fisherman's sweater was offered for the same price he paid the day before, but the Striped sweater sold for $38.50. (Compl. ¶ 57.)

On February 24, 2016, D'Aversa returned to the website, and this time noted that it was offering an "extra 30% off" of listed prices when the customer entered a code. (Compl. ¶ 58.) Again, D'Aversa noted the duration of the offer as valid "from February 24, 2016, 12:01 am ET through February 28, 2016, 11:59 pm ET." *Id*. He once again printed off the terms of the sale. (Compl. Ex. B.) He alleges that under the terms of this sale, his Fisherman sweater was offered at $76, but with the code, its price was $53.20, while his Striped sweater was offered at $54.50, and with the code its price was $38.15. (Compl. ¶ 59.)

D'Aversa next visited the site on February 29, 2016, to note that although there was no sale on that day, the prices at which the items were listed did not differ substantially from what he paid. He once again printed the relevant web pages. (*See* Compl., Ex. C.) He describes the lack of a sale on February 29, 2016 as a "rare" occurrence. (Compl. ¶ 66.) He could only be able to make this generalization by having observed the J. Crew Factory website for longer than the one week period that elapsed between his purchase and the filing of his Complaint. Stated more bluntly, he could

only make this assessment by having watched the J. Crew site *before* he bought his sweaters on February 22, 2016.

The allegations of the Complaint, collectively, speak volumes about D'Aversa's motivations. D'Aversa has no history of being a J. Crew Factory online shopper.   Only someone with a preexisting intention to file a lawsuit would have written down the terms and duration of sale as he was making his purchase.  Only someone intending to file a lawsuit would return to the website on a daily basis thereafter to see how sales terms changed, and to go to the effort to print webpages to use as exhibits to a complaint.  Only someone monitoring J. Crew Factory's website for an extended period, stretching before his purchase, could opine that it was "rare" for J. Crew Factory to have days with no special sale.  Only someone who long intended to file a lawsuit could have filed a Complaint of this variety within a mere eight days of his purchase.

### B.      What the Complaint Fails to Allege

#### 1.      Information About the Website

Plaintiff's action rests entirely on his interpretations of J. Crew Factory's website, but fails to note important details.  First, while Plaintiff alleges that J. Crew Factory represents that "valued at" means an original or regular price (Compl. ¶¶ 3, 28, 72a), the website never says this.  "  Plaintiff points to no place where J. Crew ever told him that "valued at" meant a regular or original price.

Second, the website shows that J. Crew Factory has a generous return policy, under which Plaintiff could have returned his purchases within sixty days for a full refund.  (*See* Return Policy, Declaration of Brittany Sydnor, ¶ 5, Ex. A.)  Of course, only someone looking for a lawsuit and potential incentive fees would eschew a fast, easy remedy that would return his money if he truly felt duped.

Third, Plaintiff fails to allege when he received these items, but as he spent over $100, he was eligible for free economy shipping that promised delivery within 6-8 business days.

(*See* Shipping Policy, Declaration of Brittany Sydnor, ¶ 6, Ex. B.)  Significantly, if he availed himself of this option, he filed the lawsuit before he even received the sweaters.  And even if he paid for expedited delivery, he could not have received them before February 24, 2016.  By that point, he had already been printing out evidence for two days (sales terms for the 23rd and 24th).  He could easily have returned the sweaters without even opening the box.

Finally, Plaintiff omits that J. Crew Factory is absolutely transparent that its sales change frequently, often on a daily basis.  The "About Us" page tells visitors:  "We're everything you love about J. Crew with new deals every day.  We have a team dedicated to creating fun, colorful, easy to wear styles just for us.  No outtakes from J. Crew, just more of the style you love with deals every day."  (*See* "About J. Crew Factory", Declaration of Brittany Sydnor, ¶ 7, Ex. C.)  Indeed, each of the pricing offers described in the Complaint specified the exact duration of its terms.

### 2.   Information about D'Aversa's Own Beliefs and Motivations

D'Aversa omits critical information about his own transactions.  For example, he never alleges what he personally believed the words "valued at" meant, or why.  He does not identify any factual basis for why he, or anyone, would believe that this phrase meant a "regular" or "original" price.  He does not allege that the items he bought did not have a market price equivalent to what he paid.  He does not claim that the sweaters were of lesser quality than what he expected.  It does not appear that he has conducted any investigation to determine what other retailers, including J. Crew Factory's competitors, charge for similar items.  His allegations of actual and justifiable reliance appear only as part of a rote recitation of the elements of his claims.  *See, e.g.*, Compl. ¶ 199 ("Plaintiff and other reasonable consumers . . . reasonably relied on Defendants' representations set forth herein. . . .").  Also, he does not claim to have made his purchases while in New York.

### C.    Legal Contentions

D'Aversa attempts to assert nine different claims, all of which rest on his central contention that J. Crew Factory's "valued at" prices purport to be original or regular prices:  Count I – consumer fraud laws of fifty states and D.C.; Count II – violations of New York GBL §349 and §350; Count III – violation of the New Jersey Consumer Fraud Act; Count IV – violation of the New Jersey Truth in Consumer Contract, Warranty and Notice Act; Count V – breach of contract; Count VI – breach of contract under the covenant of implied good faith and fair dealing; Count VII – breach of express warranty; Count VIII – unjust enrichment; Count IX – negligent misrepresentation.

In support of several of his claims, D'Aversa relies on "pricing guides" established by the Federal Trade Commission, and published at 16 C.F.R. §233.1.

D'Aversa wants to represent a nationwide class defined as:  "All United States citizens who purchased any item from Defendants' online J. Crew Factory store website between March 1, 2010 and the present."  (Compl. ¶ 79.)  He also identifies a New Jersey subclass.  (Compl. ¶ 80.)

## III.   ARGUMENT

### A.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1):  Plaintiff Has Sustained No Injury Fairly Traceable to J. Crew Factory

#### 1.    Rule 12(b)(1) Requires Dismissal Where the Pleadings or Evidence Demonstrate That the Court Lacks Subject Matter Jurisdiction

A motion under Rule 12(b)(1) may attack either the facial sufficiency of the pleadings to demonstrate the existence of subject matter jurisdiction, or may present an evidentiary challenge. Plaintiff bears the burden of establishing federal jurisdiction, and where the face of a complaint does not demonstrate a basis for standing, the Court must dismiss the action.  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  Where a defendant raises a factual challenge to the Court's jurisdiction, the Court may resolve any disputed jurisdictional fact issues by referring to evidence outside of the pleadings.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

### 2.      Extrinsic Evidence and the Allegations of the Complaint Demonstrate Plaintiff Lacks Standing

D'Aversa does not have standing under Article III.  The circumstances surrounding the filing of this Complaint, as well as the investigative conduct described in it, demonstrate that Plaintiff bought his sweaters for one reason only:  doing so would enable him to file a lawsuit.  In order to satisfy the Constitution's standing requirements, Plaintiff must establish three things:

> **First [she must have] suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of**. . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (emphasis added).  Here, Plaintiff's alleged "injury" consists solely of disappointed expectations that he did not get as good a deal as he wanted based on the "valued at" price.  But this "injury," and any causal connection to J. Crew, vanishes where Plaintiff knowingly bought the sweaters in order to become a plaintiff.  It is well-established that a plaintiff may not create federal standing for himself through "self-inflicted" injury, which "break[s] the causal chain."  *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013), as amended (Mar. 21, 2013) (citing *St. Pierre v. Dyer*, 208 F.3d 394, 403 (2d Cir. 2000)).  *See also, e.g.*, *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151 (2013) (a plaintiff "cannot manufacture standing merely by inflicting harm on [himself]. . . ."); *Diamond v. Charles*, 476 U.S. 54, 69-70 (1986) (party's liability for attorney's fees was a consequence of his own decision to intervene in the case, "cannot fairly be traced" to the law challenged, and cannot confer Article III standing); *In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*, No. CIV.A. 03-4558, 2012 WL 379944, at *23 (D.N.J. Feb. 6, 2012) (class members with actual knowledge of alleged defect at the time of purchase "would not be able to show causation to support their implied warranty claims.").

Here, the behavior described in the Complaint creates a compelling inference that D'Aversa made this purchase for secondary gain. Nothing else could explain the manner in which, with no history of making purchases on this site, D'Aversa wrote down sales terms on day 1, collected evidence on days 2, 3, and 7, and knew that it was "rare" for the site to have days without special sales. Nothing else could explain opting for a lawsuit rather than an easy refund. Nothing else could explain a 38 page, nine count Complaint, invoking the laws of 50 states by day 8.

### 3. Plaintiff Lacks Standing Under the Law of Any State But New Jersey

D'Aversa also lacks standing to pursue claims under the laws of any state other than New Jersey. Count I purports to allege violations of the consumer fraud laws of all fifty states and the District of Columbia, but the Complaint does not identify any class representative with standing to pursue claims under these state laws. The standing inquiry requires "careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (internal citation omitted). A plaintiff "must demonstrate standing for each claim he seeks to press." *Id.* at 352. "Nor does a plaintiff who has been subject to [allegedly] injurious conduct of one kind possess by virtue of that [alleged] injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982).

Here, in Count I of the Complaint (¶¶ 101-114), Plaintiff seeks to represent class members nationwide under the consumer protection laws of all fifty states and D.C. Courts routinely dismiss at the pleadings stage under these circumstances. The same result should obtain here. *See Simington v. Lease Fin. Grp., LLC*, No. 10 Civ. 6052(KBF), 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) (dismissing nationwide class claims because plaintiffs "do not have standing to bring claims under other state statutes—even where they are named plaintiffs"); *Jurgensen v. Felix Storch, Inc.*, No. 12 Civ. 1201 (KBF), 2012 WL 2354247, at *10 (S.D.N.Y. June 14, 2012) (same);

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49-50 (E.D.N.Y. 2014) (same); *Gunther v. Capital One, N.A.*, 703 F. Supp. 2d 264, 274-75 (E.D.N.Y. 2010) (same); *Temple v. Circuit City Stores, Inc.*, No. 06 CV 5303(JG), 2007 WL 2790154, at *8 (E.D.N.Y. Sept. 25, 2007) (same); *Parks v. Dick's Sporting Goods, Inc.*, No. 05-CV-6590 (CJS), 2006 WL 1704477, at *2 (W.D.N.Y. June 15, 2006) (same).

### B.   Rule 12(b)(6):  Plaintiff's Complaint Fails to State a Claim

#### 1.   Plaintiff Must Plead Facts Under Rules 8 and 9(b) to Show Entitlement to Relief

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "is not akin to a probability requirement . . .  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks omitted.)  A court need not accept legal conclusions in a complaint as true, *Iqbal*, 556 U.S. at 678; thus, "a complaint that merely 'tenders naked assertions devoid of further factual enhancement' fails to" survive a motion to dismiss, *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678); *see also Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11, 13 (2d Cir. 2013).

Where a complaint asserts claims under the New Jersey Consumer Fraud Act and common law negligent misrepresentation, the plaintiff must also comport with the requirement of Fed. R. 9(b) to plead the circumstances of the fraud with particularity.  *See, e.g.*, *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 372 (D.N.J. 2015) (citing *F.D.I.C. v. Bathgate*, 27 F.3d 850 (3d Cir. 1994)); *Marrin v. Capital Health Sys., Inc.*, Civ. 14–2558 (FLW), 2015 WL 404783, at *9 (D.N.J. Jan. 29, 2015).  Plaintiff's Complaint here falls woefully short of that strict pleading burden.

### 2. Plaintiff Pleads No Facts to Support His Interpretation of "Valued At"

Plaintiff's entire complaint rests on his assertion that J. Crew Factory's phrase "valued at" purports to be a "regular" or "original" price. D'Aversa's most fundamental pleading defect is that he has not pled a single fact to support this interpretation. He has not pointed to anything that J. Crew said to convey this meaning, and has not identified any source for his belief. And absent some conduct by J. Crew to create a different belief, a consumer and this Court can only interpret the phrase in accordance with common English usage. "Valued" is a passive participle of the transitive verb "value," whose first and simple definition, according to Merriam-Webster's Online Dictionary, is "to make a judgment about the amount of money that something is worth." Synonyms include "estimate, appraise, evaluate, rate and assess." *See* www.merriam-webster.com/dictionary/value.

Contrary to D'Aversa's allegations, J. Crew's "valued at" statement reflects a value comparison, not a price comparison. For this simple reason, each of his claims fails. There is nothing deceptive or unfair about offering goods for prices lower that their value. He has not alleged a single fact to demonstrate that these items did not have values equivalent to the "valued at" figure.

### 3. Count I Fails to State a Claim Under the Various State Consumer Laws

Even if Plaintiff had standing to pursue claims under the fifty plus statutes cited in Count I, his boilerplate pleading fails to state a claim. Plaintiff has not identified any of the elements of these statutes, nor has he pled facts to support plausible claims as required by *Twombly/Iqbal*. He also has come nowhere near the level of specificity required in those states whose consumer fraud laws must be pled in conformity with Rule 9(b). *See e.g.*, *Mahfood v. QVC, Inc.*, No. SAC060659AGANX, 2007 WL 9363986, at *3-*4 (C.D. Cal. Feb. 7, 2007) (complaint alleging "Retail Value" prices were deceptive under California's UCL and CLRA dismissed, finding, *inter alia*, that plaintiff failed to state with specificity "why and how defendant's Retail Values are

false"); *Pireilli Armstrong Tire Co. v. Walgreen Co.*, No. 09-C-2046, 2009 WL 2777995, at *4 (N.D. Ill. Aug. 31, 2009) (complaint failed to state a claim under the Illinois Consumer Fraud Act because it failed to satisfy Rule 9(b)'s "who, what, where, when and how" requirements).

### 4. Plaintiff Has Not Stated A Claim Under GBL §349 and §350

#### (a) Plaintiff Has Not Sustained Any Cognizable Injury

In order to state a *prima facie* case under NY GBL §§349/350, a plaintiff must allege facts showing that he has suffered a cognizable injury. GBL §§349(h), 350-e(3); *see also City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621-22 (2009) (GBL §349) and *Gristede's Foods, Inc. v. Unkechaunge Nation*, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007) (standards under §349 and §350 are substantively identical). In this case, Plaintiff attempts to articulate two theories of injury, namely: (1) he would not have purchased the items but for the alleged deception (Compl. ¶ 126); and (2) that he received "something less than what was advertised" by purchasing items he believed to be "discounted," but were, allegedly, their "everyday, regular price." (Compl. ¶ 125.) Neither of these allegations represents a cognizable injury under New York GBL §§349/350.

First, it is well-settled under New York law that it is not sufficient for a plaintiff to allege injury by claiming that he would not have bought an item "but for" the alleged deception. *See Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999) (dismissing claim under §349 that plaintiffs were injured by tobacco manufacturers' deceptive advertising where the sole injury— "that defendants' deception prevented them from making free and informed choices as consumers" —did not constitute actual harm under the statute); *see also Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 679 (S.D.N.Y. 2012) (citing *Small*, holding "[T]he New York Court of Appeals has expressly rejected [the argument] 'that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under NY GBL

§349.'"").  To the extent that Plaintiff contends that he would not have purchased the items save for the allegedly deceptive practices, his claim fails as a matter of law.

Plaintiff's second theory of cognizable injury—that he "received something less" than what was advertised—fares no better.  In order to plead a cognizable injury, a plaintiff must assert a harm that is independent of the claimed deception; otherwise the complaint merely "sets forth deception as both act and injury," and fails to assert any independent harm.  *Small*, 720 N.E.2d at 898.  In other words, a plaintiff must plead that "[t]he deception is the false and misleading [advertisement], and the injury is the purchase price."  *Dimond v. Darden Rests., Inc.*, No. 13 Civ. 5244, 2014 WL 3377105, at *9 (S.D.N.Y. July 9, 2014) (quoting *Edin v. Kangadis Food Inc.*, No. 13 Civ. 2311, 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013)).  But there can be no "purchase price" injury where, as here, the plaintiff received the value of what he paid for.

The Complaint establishes that D'Aversa received two sweaters for prices he agreed to pay, and nothing in the Complaint indicates that the sweaters were not worth the amount he paid.  He therefore has no claim:  "The rationale of *Small* and its  progeny is that deceived consumer may nevertheless receive—and retain the benefits of—something of value, even if it is not precisely what they believed they were buying."  *Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 452 (E.D.N.Y. 2012) (citing cases); *see also Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (N.Y. App. Div. 3d Dep't 2007) ("Without further allegations that, for example, the price of the product was inflated as a result of defendant's deception . . . plaintiff's claim 'sets forth deception as both act and injury' and, thus, 'contains no manifestation of either pecuniary or actual harm.'") (quoting *Small*, 720 N.E.2d at 898)); *Sokoloff v. Town Sports Int'l Inc.*, 6 A.D.3d 185, 186 (N.Y. App. Div. 1st Dep't 2004) (upholding dismissal of §349 claim where plaintiff did not "claim any kind of monetary loss

other than payment of her membership fees [and] does not claim that defendant failed to deliver the services called for in the contract.").

The few courts that have had the opportunity to address D'Aversa's "novel" theory of injury under statutes similar to GBL §349/§350 have consistently rejected it.  *See, e.g.*, *Shaulis v. Nordstrom Inc.*, 120 F. Supp. 3d 40, 51-52 (D. Mass. 2015), *appeal filed* ("[I]t appears that [plaintiff] paid $49.97 for a sweater that is, in fact, worth $49.97. . .  [T]he fact that plaintiff may have been manipulated into purchasing the sweater because she believed she was getting a bargain does not necessarily mean she suffered economic harm:  she arguably got exactly what she paid for, no more and no less.")*; see also Mulder v. Kohl's Department Stores, Inc*., 2016 WL 393215, at * 6 (D. Mass. Feb. 2, 2016) (same); *Kim v. Carter's Inc*., 598 F.3d 362, 365-66 (7th Cir. 2010) (consumers failed to allege injury where retailer sold them clothing that was advertised as discounted from suggested prices); *Mulligan v. QVC, Inc.*, 382 Ill.App.3d 620, 629 (Ill. App. Ct. 2008) (affirming dismissal of consumer fraud claim alleging "retail value" was overstated, finding that plaintiff "knew with whom she was dealing, accepted the [items] at a particular price for a myriad of different reasons, and ultimately received the benefit of her bargain")*.

> **(b)   Plaintiff Cannot Invoke New York's GBL 349 and 350 for a Transaction that Occurred in New Jersey**

The New York Court of Appeal has held that extraterritorial application of New York GBL §§349 and/or 350 is impermissible.  In *Goshen v. Mut. Life Ins. Co.*, the Court refused to extend the protection of New York's Consumer Protection Act (including GBL §§349 and 350) to plaintiffs that did not reside in New York, and where the transactions at issue did not take place in New York. 98 N.Y.2d 314, 324-25 (N.Y. 2002).   The Court considered whether an allegedly deceptive marketing campaign that is claimed to have been devised in New York, but injures a consumer in a transaction outside the state, constitutes an actionable deceptive act or practice under New York's

Consumer Protection Act. *See id.* at 324. The Court ruled that in order for a plaintiff to avail himself of New York's Consumer Protection Act, the transaction alleged to have injured the consumer "must occur in New York." *Id.* The Court explicitly rejected the contention that an allegation that the allegedly deceptive marketing campaign was "conceived and orchestrated in New York" would suffice, holding that "the origin of any advertising or promotional conduct is irrelevant if the deception itself . . . did not result in a transaction in which the consumer was harmed." *Id.* at 326; *see also Kaufman v. Sirius XM Radio, Inc.*, 474 Fed. Appx. 5, 7 (2d. Cir. 2012) (affirming dismissal of plaintiffs' GBL §349 claim, rejecting contention that out-of-state internet transactions could form the basis for a GBL claim, even though defendant invoiced, collected and retained payment of the allegedly deceptive fees in New York).

In this case, the Complaint alleges that Plaintiff is a resident and citizen of the state of New Jersey (Compl. ¶ 11) and nowhere alleges that Plaintiff made his purchase while in New York. D'Aversa's allegation that the "deceptive advertising, marketing, and sales practices originated from and were performed at Defendants' headquarters in New York" and "operate their . . . store website out of their headquarters in New York" (Compl. ¶ 120) are insufficient to permit his GBL claims.

### 5.   Plaintiff Has Not Stated a Claim under the N.J. Consumer Fraud Act

To state a claim under the New Jersey Consumer Fraud Act, N.J.S.A. 56.8-1, *et. seq.* ("NJCFA"), a plaintiff must allege: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *Indian Brand Farms, Inc. v. Novartis Corp. Prot., Inc.*, 617 F.3d 207, 219 (3d Cir. 2010) (quoting *New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 176 (App. Div. 2003)). And, because a claim under the NJCFA is "essentially a fraud claim" such claims must be "pled with specificity to the extent practicable." *Hoffman v. Hampshire Labs, Inc.*, 963 A.2d 849, 853 (N.J. App. Div. 2009). Here, Plaintiff cannot establish either unlawful

conduct by J. Crew or an ascertainable loss (and therefore no causal connection), therefore his NJCFA claim must fail.

### (a)    Plaintiff Has Failed to Allege Sufficient Facts to Support His Claim that Defendants Engaged in Unlawful Conduct

The New Jersey Supreme Court has held that "[t]o constitute consumer fraud . . . the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer[.]" *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 655 A.2d 417, 430 (N.J. 1995).  Here, the business practice that Plaintiff complains of is that J. Crew allegedly "continually held site-wide sales" and that it "offered items for sale at a discount off of their 'Valued at' prices" while allegedly never offering such items at the full "valued at" price (*See* Compl. ¶ 145(a)-(d)).[1]  Yet, Plaintiff pleads no factual support to *suggest* that the complained of practice is outside of the norm of reasonable business practice or has the capacity to mislead or victimize consumers.  Further, Plaintiff has pled nothing to establish that "valued at" price was anything other than a value comparison, not a price comparison.  Plaintiff's own "say-so" does not suffice, especially where his interpretation conflicts with the plain meaning of "valued at."[2]

Furthermore, nowhere in the Complaint does Plaintiff allege that that he received anything of lesser value or quality than what he paid for.  Rather, he is simply unhappy that other shoppers did not pay *more* for the items.  This precise theory of "unlawful conduct" has been  rejected by New Jersey state and federal courts.  In *Hoffman v. Macy's Inc.*, the plaintiff alleged that the practice at issue—*i.e.,* selling a Nespresso® espresso machine for $299.00, while advertising the machine's

---

[1] Incongruously, Plaintiff's NJCFA claim also complains that J. Crew "charged their customers the full, regular price for the items on their website rather than the advertised sale or discounted price" (Compl. ¶ 145(e)), which is precisely the opposite of what he appears to be complaining of (*i.e.*, that J. Crew Factory items were never offered for sale at the "Valued at" or "regular" price (Compl. ¶ 145(a)-(d)).

[2] Plaintiff also purports to base this claim on an alleged violation of the FTC's Guides Against Deceptive Pricing, 16 C.F.R. §233.1.  However, the Guides do not have the force of law.  The FTC explained in 1964 that they are "to be considered as guides and not as fixed rules of 'do's' and 'don'ts' or detailed statements of the Commission's enforcement policies." 29 Fed. Reg. 178 (1964).  They surely do not create an "established legal right…established by State or federal *law*."  N.J.S.A. 56:12–15 (emphasis added).

"regular" price as $699.00, and its "MSRP" as $499.00—constituted an unconscionable business practice. The court held, *inter alia*, that plaintiff's complaint failed to "illustrate how [plaintiff], or other members of the putative class, were affected by the alleged misrepresentation [of price]." No. BER-L-39766-09, 2009 WL 10266572, at *3-*4 (N.J. Sup. Ct. July 17, 2009), a*ffirmed,* No. L-3926-09, 2011 WL 6585 (N.J.Sup.Ct.App.Div. June 28, 2010), *cert. denied,* 204 N.J. 38 (N.J. 2010). Likewise, in *Waldron v. Jos. A. Bank Clothiers, Inc.,* No. 12-CV-02060 (D.N.J. Jan. 28, 2013) (Slip. Op. attached hereto as Ex. A), the court rejected a similar theory of unlawful conduct. The plaintiff in *Waldron* complained that "'[t]he majority of [defendant's] merchandise has been continually on sale for the past several years, even though each advertised sale is described as being of limited duration, thus creating the false and misleading impression that the price will increase back to the "regular price" if a consumer does not make a purchase by the end of the sale." *Id.* at 2. The court rejected the notion that that such practices constitute unlawful conduct. *See id.* at 6 ("Plaintiffs do not lend factual support to their conclusion that [defendant's] business practices deviate from the norm . . . and instead attempt to shift the burden to [defendant]. . . ."); *see also Turf Lawnmower Repair*, 655 A.2d at 430 (N.J. 1995). D'Aversa's claim must therefore fail.

### (b)    Plaintiff Fails to Allege Facts to Demonstrate Ascertainable Loss

Plaintiff's NJCFA claim also fails for the independent reason that he has failed to plead any "ascertainable loss." *See Thiedemann v. Mercedes-Benz USA*, 872 A.2d 783, 791 (N.J. 2005) ("As a prerequisite to the right to bring a private action, a plaintiff must be able to demonstrate that he or she suffered an ascertainable loss as a result of the unlawful conduct." (internal citations omitted)); *Weinberg v. Sprint Corp.,* 173 N.J. 233, 249, 801 A.2d 281, 291 (2002) ("The [NJCFA] creates a private cause of action, but only for victims of consumer fraud who have suffered an ascertainable

loss."). Like the "unlawful conduct" element, ascertainable loss must also be pled with particularity. *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 538-539 (D.N.J. 2011).

In cases involving alleged misrepresentation, either out-of-pocket loss or a demonstration of loss in value is required to meet the ascertainable loss hurdle. *See Arcand v. Brother Intl Corp.*, 673 F. Supp. 2d 282, 300 (D.N.J. 2009) ("At the very least, a consumer must be able to quantify or measure what loss he has suffered or will suffer as a result of the unlawful conduct."). A plaintiff asserting a NJCFA violation must "produce specific proofs to support or infer a quantifiable loss in respect of their benefit-of-the-bargain claim; subjective assertions without more are insufficient to satisfy the requirement of an ascertainable loss that is expressly necessary for access to the [NJCFA] remedies." *Thiedemann*, 872 A.2d at 795. As a policy basis, "[t]he ascertainable loss requirement operates as an integral check upon the balance struck by the [NJCFA] between the consuming public and sellers of goods." *Id.* at 794.

There are two methods to establish that a plaintiff has been damaged by an ascertainable loss. The benefit of the bargain rule "allows recovery for the difference between the price paid and the value of the property had the representations made been true." *Romano v. Galaxy Toyota*, 945 A.2d 49, 57 (N.J. Super. Ct. App. Div. 2008). The second damage calculation is the "out of pocket" approach "which provides recovery for the difference between the price paid and the actual value of the property acquired." *Id.* "These approaches each seek to make 'an injured party whole,' and both methods are designed to fairly and reasonably compensate that injured party for the damages or losses proximately caused by the alleged consumer fraud." *Id.* (internal citations omitted).

In this case, Plaintiff has not alleged an ascertainable loss calculable by either of these methods. The *Hoffman* and *Waldron* courts have considered, and soundly rejected, the precise damages theory articulated by D'Aversa. In *Hoffman*, the court held that plaintiff's theory of

ascertainable loss—*i.e.*, that he suffered an "out-of-pocket" loss because value of the espresso machine was allegedly misrepresented—was "not factually illustrated," finding:

> Defendant 'deliver[ed]' the espresso machine at the advertised price of $299.99. The claim that defendant misrepresented the MSRP or "regular price" of this item provides no basis for establishing an "ascertainable loss." . . . We are unable to discern any loss incurred by plaintiff as a result of the conduct alleged. We are, therefore, satisfied that the trial judge properly granted defendant's motion to dismiss the CFA claims on this basis. 2011 WL 6585, at *3-*4.

The *Waldron* court followed suit, rejecting the difference between what was actually paid and "what the discount price should have been" as a method of determining ascertainable loss:

> Plaintiffs . . . have failed to provide this Court with even a vague estimate of that figure or facts suggesting one exists. . . Plaintiffs have not alleged that the product was defective nor that they did receive what they were promised. . . Nor do Plaintiffs allege that they were dissatisfied with the product, demanded a refund, or had their refund refused. Plaintiffs' claimed monetary loss is thus purely hypothetical and speculative. Therefore, the facts as alleged in the complaint do not constitute an "ascertainable loss" under N.J.S.A. 56:8-19. *Waldron,* at 7 (internal citations and quotations omitted).

*See also Hoffman v. Hampshire Labs, Inc.*, 963 A.2d 849, 854 (N.J. Super. Ct. App. Div. 2009) (upholding dismissal based on lack of ascertainable loss; where plaintiff did not allege that the item had not performed as advertised, nor that he was dissatisfied with the item and denied a refund, the claimed loss was purely hypothetical and did not constitute an ascertainable loss).

Plaintiff's only purported "ascertainable loss" is his suggestion that he did not obtain the "actual discount[] that he was entitled to receive but did not." (Compl. ¶ 10.) But, just like the plaintiffs in *Hoffman* and *Waldron*, Plaintiff's amorphous implication that he should receive some additional discount is simply not an ascertainable loss for purposes of the NJCFA.

### 6.    Plaintiff's TCCWNA Claim Therefore Also Fails

Plaintiff purports to bring a separate claim under New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA). The TCCWNA provides in pertinent part: "No seller . . .

shall . . . offer to any consumer or prospective consumer or enter into any written consumer contract . . . which includes any provision *that violates any clearly established legal right* of a consumer or responsibility of a seller, . . . established by State or Federal law. . . . N.J.S.A. 56:12–15 (emphasis added).   The Third Circuit has made clear that "TCCWNA does not establish consumer rights or seller responsibilities . . . the statute bolsters rights and responsibilities established by other laws." *Watkins v. DineEquity, Inc.*, 591 Fed. Appx 132, 134-35 (3d Cir. 2014).

Here, the only "clearly established legal right" that Plaintiff claims that J. Crew violated is his right not to be subjected to terms prohibited by the NJCFA.[3]   (Compl. ¶ 159.)   As discussed in the preceding section, Plaintiff cannot state a claim under the NJCFA, and thus his TCCWNA claim also fails.   *See Wilson v. Kia Motors Am., Inc.*, 2015 WL 3903540, at *4 (D.N.J. June 25, 2015) ("Because Plaintiff fails to plead a cognizable claim under the CFA, her argument fails. . .  Plaintiff has not plead an ascertainable loss."); *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 380 (D.N.J. 2015) ("Since the Court finds that Plaintiffs' have failed to state viable CFA claims, Plaintiffs' TCCWNA claims cannot survive to the extent they rely on the alleged CFA violations."); *Ensey v. Gov't Employers Ins. Co.*, 2013 WL 5963113, at *7 (D.N.J. Nov. 7, 2013) (same).

### 7.    The Complaint Does Not Reveal Any Breach of Contract

A party suing for breach of contract under New Jersey law must establish:   "(1) a contract between the parties; (2) a breach of that contract; [and] (3) damages flowing therefrom. . . ." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).   "The party bringing the action [for breach of contract] has the burden of establishing each element in order to establish breach of contract."   *Cargill Global Trading v. Applied Development Co.*, 706 F. Supp. 2d 563, 579 (2010) (citing *Nolan v. Control Data Corp.*, 243 N.J.Super. 420, 438 (App. Div. 1990)).   Plaintiff's breach

---

[3] Again, the FTC guidelines do not have the force of law.

of contract claim rests on the same insufficient allegations as his other claims.  The face of the Complaint demonstrates that J. Crew Factory offered each sweater to Plaintiff for a listed price, that Plaintiff agreed to pay the listed price, and that Plaintiff received the exact products he asked for. He has identified no damage.

### 8. Plaintiff Also Fails to State a Claim for Breach of Contract Under the Implied Covenant of Good Faith and Fair Dealing

New Jersey's implied covenant of good faith and fair dealing requires that "'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000) (citing *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 419 (1997)). Plaintiff's implied covenant claim fails because he does not allege that J. Crew "acted in bad faith or engaged in some other form of inequitable conduct in the performance of a contractual obligation." *Pactiv Corp. v. Perk-Up, Inc.*, No. CIV. A. 08-05072 DMC, 2009 WL 2568105, at *12 (D.N.J. Aug. 18, 2009) (quoting *Black Horse Lane*, 228 F.3d at 289, internal quotations omitted).  J. Crew never told him that "valued at" meant a regular or original price,  J. Crew charged him a price which he agreed to pay, and  he elected not to seek a refund.

### 9. Plaintiff's Breach of Express Warranty Claim Fails Because No Express Warranty Existed

In order to state a claim for breach of express warranty, Plaintiff must properly allege: "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (citing N.J. Stat. Ann. §12A:2– 313).  Here, Plaintiff's express warranty claim is based on his claim that J. Crew's "valued at" pricing was inaccurate.  "However, 'an affirmation merely of the value of the goods . . . does not

create a warranty.'" *Id.* (citing N.J. Stat. Ann. §12A:2–313(2)).  D'Aversa's claim fails under the express terms of the U.C.C.

### 10.    Plaintiff's Unjust Enrichment Claim Also Fails

Plaintiff's unjust enrichment claim fails for the same reason as his claim for breach of contract.  To state a claim, a plaintiff must allege that the defendant received a benefit at his expense, under circumstances that would make it unjust for the defendant to retain the benefit without paying for it. *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 754 (D.N.J. 2013).  "Unjust enrichment is not a viable theory—and disgorgement is therefore not available—in circumstances in which a consumer purchases specific goods and receives those same specific goods." *In re Cheerios Mktg. & Sales Practices Litig.*, No. 09–cv–2413, 2012 WL 3952069, at *13 (D.N.J. Sept. 10, 2012) (citing *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 505 (D.N.J. 2006)); *see also Hoffman v. Cogent Sols. Grp., LLC*, 2013 WL 6623890, at *5 (D.N.J. Dec. 16, 2013).  Plaintiff does not allege that he paid more than the sweaters were worth.  This claim must fail.

### 11.    Plaintiff Fails to State a Claim for Negligent Misrepresentation

Under New Jersey law, the elements of a negligent misrepresentation claim are: (1) defendant negligently made a false communications of material fact; (2) plaintiff justifiably relied upon the misrepresentation; and (3) the reliance resulted in an ascertainable loss or injury. *Szczubelek v. Cendant Mortgage Corp.*, 215 F.R.D. 107, 126-7 (D.N.J. 2003); *see H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 334 (1983).  The Complaint does not satisfy any of these elements, let alone with the requisite particularity under Rule 9(b).

Moreover, Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine.  Plaintiff recognizes that his claim stems from his transaction, which he himself claims is a contract.  (Compl. ¶ 163.)  He does not point to any other basis for his negligent misrepresentation claim.  Plaintiff's negligent misrepresentation claim is "superfluous and counterproductive," and

must be dismissed.  *Alloway v. Gen. Marine Indus.*, 149 N.J. 620, 641 (1997); s*ee also Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995); *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 678 (D.N.J. 2009) ("district courts have consistently applied the economic loss doctrine to fraud and negligent misrepresentation claims.").

**C.      Rules 12(f), 23(d)1(D):  Plaintiff's Nationwide Class Claims Should Be Stricken**

Under Rule 12(f), this Court may strike any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FRCP 12(f).  Rule 23(c)(1) directs district courts to determine "at an early practicable time" whether the proposed class satisfies the class certification requirements, and Rule 23(d)(1)(D) empowers the Court to "require that the pleadings be amended to eliminate allegations about representation of absent persons."  FRCP 23(c)(1), 23(d)(1)(D).

Where it is clear from the face of a complaint that proposed class claims are fatally defective, the better course is to simply strike the class action allegations.  *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[s]ometimes the issues are plain enough from the pleadings" to show that a class should not be certified).  Several district courts within this Circuit have held that "such motions may be addressed 'prior to the certification of a class if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear."  *Davito v. AmTrust Bank*, 743 F. Supp. 2d 114, 115-16 (E.D.N.Y. 2010) (citation omitted).  As these courts have recognized, the Federal Rules of Civil Procedure permit a court "to eliminate allegations about the representation of absent persons" where it is "clear" that the plaintiffs cannot succeed on those claims.  *Rahman v. Smith & Wollensky Rest. Grp.*, No. 06 Civ. 6198, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008) (internal quotation marks and citation omitted); *see also Jaffe v. Capital One Bank*, No. 09 Civ. 4106, 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1, 2010).

Those U.S. Circuit Courts that have addressed the issue have concluded that a court may not certify a class where doing so will require the application of the laws of all fifty states.  *See, e.g.,*

*Pilgrim v. Universal Health Card*, 660 F.3d 943, 948-949 (6th Cir. 2011) (affirming trial court's decision to strike nationwide class allegations, where the consumer protection laws of all fifty-one jurisdictions would have to be applied, and where it was clear that variances in the laws would preclude a nationwide class); *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 752-53 (7th Cir. 2011) (affirming denial of nationwide class under the consumer protection laws of the fifty states as unmanageable); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 597 (9th Cir. 2012) (reversing class certification, holding that material differences in consumer protection laws amongst the states precluded certification); *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (reversing class certification: "We deem it unnecessary here to review each state's consumer protection laws, and rather rely on our sister circuit's conclusion that '[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules.'"); *see also Cole v. General Motors*, 484 F.3d 717, 725-26 (5th Cir. 2007); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016-17 (D.C. Cir. 1986).  Therefore, a trial court may properly strike nationwide class allegations where Plaintiff seeks to apply the varying laws of 50 different states.  *See, e.g.*, *Pilgrim*, 660 F.3d at 944-49 (substantial variances in state consumer fraud laws rendered the case neither "efficient nor workable" as a nationwide class action); *In re Yasmin & Yaz Mktg., Sales Practices & Relevant Prods. Liab. Litig.*, 275 F.R.D. 270, 275-76 (S.D. Ill. 2011); *Route v. Mead Johnson Nutrition Co.*, 2013 WL 658251, at *8 (C.D. Cal. Feb. 21, 2013).

In this case, Plaintiff proposes a nationwide class of purchasers who will pursue nine different theories of liability under the laws of fifty states and the District of Columbia.  Even if Plaintiff had pled viable causes of action (he has not), he could not obtain certification of a nationwide class.  A routine choice-of-law analysis confirms that no single jurisdiction's law will provide a uniform rule of decision, rendering a nationwide class action unmanageable.

The first step in New York's choice-of-law analysis is to determine whether actual conflicts exist between the laws of different jurisdictions whose law might apply.[4]  *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (1993).  For the theories advanced by D'Aversa, many appellate decisions confirm the existence of serious conflicts between the laws of the fifty states.  *See, e.g., Cole v. General Motors Corp.*, 484 F.3d 717, 726-730 (5th Cir. 2007); *Mazza*, 666 F.3d at 589-594; *In re St. Jude Medical*, 425 F.3d at 1120;  *In re Aqua Dots*, 654 F.3d at 752-753; see also *In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. 139, 146-150 (S.D.N.Y. 2008) (significant, outcome dispositive differences existed in the consumer fraud, breach of warranty and unjust enrichment law of all fifty states and the District of Columbia).  J. Crew attaches, as Exhibit B hereto, a chart reflecting substantial, outcome determinative differences in the laws of the fifty states.[5]

The second step in a New York choice-of-law analysis is to determine which state has the greatest interest in the litigation, using New York's "center of gravity" or "grouping of contacts" approach.  *Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003) (internal citations omitted).  Even where a defendant resides in New York, and where substantial conduct occurs there, New York Courts will apply the law of other states under the circumstances presented here.  *See, e.g., In re Grand Theft Auto*, 251 F.R.D. at 146-150 (for consumer fraud, unjust enrichment, and breach of warranty, court determined that "New York's conflicts jurisprudence

---

[4] In diversity cases, a federal court must apply the forum state's choice-of-law rules in determining the applicable substantive law.  *See In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 146 (S.D.N.Y. 2008) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

[5] For example, states have materially different requirements for stating an injury (a majority of states require proof of an injury); scienter requirements (the statutes of at least 9 states (CO, KS, MS, NV, SD, UT, VA, WI, WY) require some degree of scienter); reliance and causation requirements (at least 8 states (AZ, CA, IN, OR, PA, VA, WV, WI) include a reliance requirement in their consumer protection laws, whereas other states (AL, CT, DE, IL, MA, NH) do not require any showing of reliance); statutes of limitation (limitations periods for state consumer protection laws vary from 1 to 10 years); and the kinds of relief available (some states permit recovery of damages (AZ, AK, HI, IL, IN, MA, NH, RI, SD, TX), while other states limit the available remedies to equitable or restitutionary relief (CA (UCL, FAL), GA (UDTPA), UT)).

demands that the Court apply the law of the state wherein each . . . Class member purchased [the product]"; although defendant was headquartered in New York, and conceived of its conduct there, the actual fraud occurred in states where the consumers lived); *Lite Co. v. GS 1 US, Inc.*, No. 07CV68A, 2007 WL 5035772 at *5 (W.D.N.Y. June 18, 2007) (for negligent misrepresentation, New York courts apply the law of the jurisdiction "where the last event necessary to make the actor liable occurred"); *Chrysler Capital Realty Inc. v. Grella*, No. 89 CIV. 7035 JFK, 1990 WL 67404, at *2 (S.D.N.Y. May 17, 1990) (applying Michigan law to negligent-misrepresentation claim where that state had "the most significant relationship" to plaintiff's injury) (internal quotation marks and citation omitted), *aff'd*, 942 F.2d 160 (2d Cir. 1991).

Here, as in the cases cited above, the Court here would have to apply the substantive laws, for nine different causes of action, of all fifty states and the District of Columbia.  Plaintiff's proposed nationwide class is unmanageable, cannot be certified, and should be stricken.

## IV.    CONCLUSION

For the reasons set forth above, and based on the evidence submitted herewith, J. Crew respectfully requests that this Motion to Dismiss and Motion to Strike be granted without leave to amend, and that judgment be entered in favor of J. Crew.

DATED:  April 29, 2016                **SEDGWICK LLP**

By: _____

Anthony J. Anscombe, Esq.
One North Wacker Drive, Suite 4200
Chicago, IL  60606
Tel:  312-641-9050
Fax:  312-641-9530
anthony.anscombe@sedgwicklaw.com